## STATE DEPARTMENT OF ASSESSMENTS AND TAXATION ET AL. *v.* FITZHUGH T. CLARK ET AL.

[No. 272, September Term, 1976.]

*Decided December 7, 1976.*

The cause was argued before THOMPSON, MENCHINE and LOWE, JJ.

*Ward B. Coe, III, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellants State Department of Assessments and Taxation, Supervisor of Assessments for Montgomery County and Property Tax Assessment Appeal Board. *H. Christopher Malone, Assistant County Attorney for Montgomery County,* with whom were *Richard S. McKernon, County Attorney,* and *Robert G. Tobin, Jr., Deputy County Attorney,* on the brief, for appellant Director of Finance for Montgomery County, Maryland.

*Murray L. Deutchman,* with whom were *Bullard & Deutchman, P.A.* on the brief, for appellees.

LOWE, J., delivered the opinion of the Court.

### Background

In establishing tax rates on real property, government must first have determined the assessed value of the property it may tax. This presupposes a cutoff date after which the valuation will remain fixed for purposes of the succeeding taxable year. That cutoff date, statutorily designated "the date of finality", is at the root of the issue appealed here. The tax statute, Md. Code, Art. 81, designates this "date of finality" as the 1st day of January preceding the tax year. Art. 81, § 2 (20), § 29A. Procedural protection is provided a dissatisfied taxpayer by first requiring that notice of assessment be given to him. He is then given an opportunity and a time within which he may protest the assessment to

the Supervisor of Assessments (from whom it originally emanated). Art. 81, § 29 (a). In the event of further dissatisfaction, he may protest to the local Property Tax Assessment Appeal Board and, beyond that, to the Maryland Tax Court. Art. 81, § 255. Limited review of the Maryland Tax Court's judgment is available in the circuit courts.[1] These courts may not second-guess the assessment, but may determine only whether it was supported by substantial evidence on the record or was erroneous as a matter of law. See *American Oil Co. v. Bd. of Appeals*, 270 Md. 301, 310-311; Ch. 338, Laws of 1976. These statutory remedies are exclusive, see *Tanner v. McKeldin*, 202 Md. 569, 577, and one who does not avail himself of them is generally bound by the assessment as of the date of finality, with but preciously limited relief.

Recognizing that absolute adherence to an inflexible date of finality may cause injustice to both taxpayer and State, the legislature specifically provided for a reassessment when property is subdivided or when the property's character or use is changed after the date of finality (January 1st) but before the semi-annual date of finality (July 1st). Art. 81, § 19 (a). Furthermore, for property damaged or destroyed, after the date of finality but before the semi-annual date, by fire or any other event which should cause the property to be removed from the tax rolls, Art. 81, § 31 (f) (2) alleviates taxes for the last 6 months of the taxable year and provides for refund if taxes have already been fully paid. Aside from these particular provisions, however, there is no statutory *right* to relief from an assessment for the taxable year after the date of finality. The taxpayer is of course free to apply for reassessment of the property prior to the next date of finality for the ensuing tax year and comply with the protest requirements thereafter.

---

1. At the time the facts giving rise to this litigation occurred, Art. 81, §§ 229 (i) and (l) provided for appeal from the Maryland Tax Court to the Court of Appeals. Ch. 385, Laws of 1971. By Ch. 448, Laws of 1975, the statute was amended to provide, instead, for appeal to the Court of Special Appeals. In Shell Oil Co. v. Supervisor, 276 Md. 36, the Court of Appeals declared the statute unconstitutional insofar as it allowed either appellate court to review directly the judgment of the Maryland Tax Court. Ch. 338, Laws of 1976 now allows a dissatisfied taxpayer to appeal to a circuit court for a county or the Baltimore City Court, from the Maryland Tax Court.

Undoubtedly recognizing that even these specific exceptions still left possibilities of unforeseeable injustice, the legislature enacted Ch. 732, Laws of 1949, declaring it to be an emergency measure. It is currently codified as Art. 81, § 67. At the time this litigation arose, that section read as follows:

> "The county commissioners in each county, the chief administrative officer in Montgomery County, and the department of assessments in Baltimore City, as to local taxes, and the Comptroller upon certificates of the county commissioners, the chief administrative officer in Montgomery County, or department of assessments in Baltimore City, as to State taxes, shall make all just allowances to the respective collectors for insolvencies and removals and for refunds of taxes made in accordance with the provisions of law. The final assessing authority, the supervisor of assessments and the county treasurer (in Montgomery County the director of finance) of each county and in Baltimore City, the city solicitor, and the director of the department of assessments, and in any incorporated town in Caroline County, the town boards, may by an order, decrease or abate an assessment after the date of finality for any year, whether a protest against said assessment was filed before the date of finality or not, in order to correct erroneous and improper assessments and to prevent injustice, provided, that the reasons for such decrease or abatement shall be clearly set forth in such order." [2]

Appellees' dissatisfaction with the way in which relief was granted under this section prompted the litigation below.

## Facts

Appellees own a five-and-one-half acre parcel of land located at the intersection of Muddy Branch Road and

---

2. A subsequent amendment to § 67 left this language intact.

Interstate 70S (now 270) in Montgomery County. Upon their initiative, the property was rezoned on August 25, 1970 from rural-residential to multiple family, medium density residential. As a result of that rezoning they were notified on December 10, 1971, pursuant to Md. Code, Art. 81, § 29, that their land assessment was increased from the previous year's (1971) $12,640 assessment to $132,150 for the prospective year (1972). Agreeing that the rezoning had substantially enhanced the value of their land, appellants did not protest or appeal the assessment within the time provided by Md. Code, Art. 81, § 255. On January 1, 1972, therefore, the assessment became final.

In May 1972 a sewer moratorium, which had the effect of preventing sewer extensions and attachments to appellants' land, was proclaimed by the Washington Suburban Sanitary Commission. The foundation for the increased assessment was thus denied realization, at least temporarily.

On August 29, 1972, appellees wrote to the Supervisor of Assessments requesting "reassessment of the property to be effective for the next 6 month period" in view of the cloacal restrictions. Because the legislature had not provided for reassessments within the taxable year following the date of finality, the Supervisor treated the request as a petition under Art. 81, § 67, the only statutory relief after the date of finality. That section, as indicated, authorizes the decrease or abatement of an assessment after the date of finality "in order to correct erroneous or improper assessments and to prevent injustice. . . ." The relief may be granted whether a protest against the assessment was filed before the date of finality or not; however, it may only be granted by the joint action of three officials — the final assessing authority, the Supervisor of Assessments and the County Treasurer (or in Montgomery County, the Director of Finance).

Recommending a reduction from $132,150 to $99,110, the Supervisor forwarded the matter to the Appeal Tax Court for Montgomery County.[3] After holding a hearing, during

3. The Appeal Tax Court was authorized in each county by Ch. 466, Laws of 1969. These bodies were made mandatory in each county (and Baltimore

which appellees were afforded the opportunity to present evidence and argue their position, the Appeal Tax Court issued a memorandum and order authorizing the reduction recommended by the Supervisor. The order was forwarded to the Director of Finance, and he approved it on February 23, 1973. The Appeal Tax Court then notified appellees, by letter dated March 7, 1973, that an order had been entered in their case reducing the land assessment from $132,150 to $99,110 for the taxable year 1972. Appellees filed a petition of appeal to the Maryland Tax Court on April 9, 1973 [4] and, on April 11, 1973, brought a "declaratory action" in the Circuit Court for Montgomery County. They sought:

> 1. to enjoin the collection of taxes levied without providing a rehearing on the question of the value of their property as affected by the sewer moratorium; and,
>
> 2. to declare Md. Code, Art. 81, § 67 unconstitutional *as applied to them* on the grounds that it violated appellants' rights to equal protection of the laws, due process, "and amounts to a taking without just compensation."

Following the customary procedural skirmishing during which both sides sought discovery and filed motions for summary judgment, the circuit court ruled that it had jurisdiction, that the amount of the reduction had been reached arbitrarily and that the matter was not moot because appellees had already paid the tax, albeit in escrow. The court denied appellants' motions and granted appellees' motion to the extent of remanding the case to the Supervisor of Assessments, Director of Finance, and Property Tax Assessment Appeal Board for further proceedings. Although not reaching the constitutional question, the trial judge filed

City) by Ch. 784, Laws of 1973, and designated Property Tax Assessment Appeal Boards. Neither party disputes that under either name it constitutes the "final assessing authority".

4. The Maryland Tax Court dismissed the appeal by order of August 21, 1974. The order was appealed to the Maryland Court of Appeals, but the appeal was dismissed on August 1, 1975, presumably as a result of the jurisdictional ruling in Mont. Co. Council v. Supervisor, 275 Md. 339, decided on June 26, 1975.

a well written and convincingly reasoned opinion that lacked excellence primarily in that it was wrong. The issues therein abiding were three: jurisdiction, arbitrariness of proceeding, and right to refund; but the greatest of these was jurisdiction. The State Department of Assessments and Taxation, the Supervisor of Assessments for Montgomery County, the Property Tax Assessment Appeal Board and the Director of Finance for Montgomery County have appealed.

Jurisdiction

Appellants contend that by its very language § 67 is a creature of legislative grace and provides no entitlement to relief.[5] They rely primarily upon *LaBelle v. State Tax Comm.*, 217 Md. 443, *cert. den.* 358 U. S. 889. The question involved there was:

> " ... whether the State Tax Commission had jurisdiction to hear an appeal by the property owner from the refusal of the taxing authorities of Montgomery County to reduce an assessment that had become final before they were asked to act." *Id.* at 446-447.

Mrs. LaBelle had failed to avail herself of the protest requirements within the prescribed time. There, as here, her belated protest was treated as a petition for relief under § 67 (then § 66) of Art. 81. However, Mrs. LaBelle received no relief (although the Appeal Tax Court had proposed a reduction) because neither the Supervisor of Assessments nor the Director of Finance of Montgomery County concurred in the proposed reduction. She appealed from the circuit court's ruling that the State Tax Commission had no jurisdiction to hear an appeal from the denial of relief under § 67. The Court of Appeals affirmed. It held that § 67 was a "matter of grace and not a matter of right." The Court noted that the taxpayer can appeal to the State Tax Commission as a *matter of right* only if he follows the steps prescribed by statutes:

> "If, however, he permits an assessment to become final, he can only hope that the three taxing and

---

5. *See also* 57 Op. Att'y Gen. 676, 677.

fiscal authorities who are named in Sec. 66 [now § 67] of Art. 81 will agree that his cause is just and demands relief. If they do not, the statute gives him no further remedy and the assessment that has been allowed to become final remains on the books for the year in question. The powers of the State Tax Commission are entirely statutory and the statutes confer jurisdiction on it only if an assessment is protested before it has become final." 217 Md. at 452.

Appellants point out that the *LaBelle* result and its reasoning were affirmed by the Court of Appeals as recently as June 26, 1975, in *Mont. Co. Council v. Supervisor*, 275 Md. 339. They argued that that case comes even "closer to home", for it was generated by the 25% reduction of assessments of nineteen property owners in Montgomery County, due to the sewer moratorium. As in *LaBelle*, the basic question related to jurisdiction to hear an appeal from a § 67 proceeding. Noting that the State Tax Commission was the predecessor of the Maryland Tax Court and that the legislature had not expanded the jurisdiction of the Tax Court, Judge Eldridge, writing for the Court in *Mont. Co. Council*, held that *LaBelle* controlled the question of the Maryland Tax Court's jurisdiction to hear appeals from § 67, regardless of whether relief was granted or denied: [6]

"However, this Court's decision in *LaBelle* was based upon the 'jurisdiction' of the State Tax Commission [now the Maryland Tax Court] over § 67 proceedings and not upon the standing of particular parties depending upon the nature of their interest in the § 67 proceeding. While the Court explained that the purpose of a § 67 proceeding was to grant or deny relief to the taxpayer as a matter of 'grace' instead of as a matter of right, nothing in the Court's opinion indicated that the State Tax Commission's power to

---

[6]. Appellants argued that they were not seeking relief as a matter of grace, but were attempting to prevent an unwarranted reduction of assessments as the elected representatives of the people. 275 Md. at 344.

review § 67 determinations depended upon whether the taxpayer had won or lost in the § 67 proceedings. Instead, the Court held that the statutes confer 'jurisdiction on it [the State Tax Commission] only if an assessment is protested before it has become final.' " 275 Md. at 344.

Although these cases appear dispositive at first blush, the trial judge below perceived that a more fundamental right of appeal exists than that provided by statutes or administrative regulations. Relying upon *Criminal Inj. Comp. Bd. v. Gould*, 273 Md. 486, he held that the circuit court had jurisdiction to review the appellants' actions because of its inherent power to correct abuses of discretion and arbitrary, illegal, capricious or unreasonable acts. He held that the *Mont. Co. Council* case and *LaBelle*, upon which it rested, presented no problem:

"... because the matter now before this Court is not a statutory appeal but an invocation of the court's inherent powers of judicial review and the *Gould* case would appear to be completely controlling."

We fully agree. In a scholarly analysis, the late Judge William O'Donnell pointed out in *Gould* that neither the absence of a defined jurisdictional authority nor the express abrogation thereof by the legislature can deprive litigants of the right to raise questions involving their fundamental rights in an appropriate judicial forum. Likewise, the courts cannot be deprived of the right to decide such questions in an appropriate proceeding:

"Chief Judge Hammond, who delivered the majority opinion in *Insurance Comm'r v. National Bureau of Casualty Underwriters, supra*, [248 Md. 292] stated:

'The courts have been alert to exercise their residual power to restrain improper exercises of administrative powers whether judicial or legislative in nature. If the legislature has not expressly provided for judicial review, a court

will ordinarily utilize its inherent powers to prevent illegal, unreasonable, arbitrary or capricious administrative action. In *Heaps v. Cobb*, 185 Md. 372, 379, this Court said: 'The legislature is without authority to divest the judicial branch of the government of its inherent power to review actions of administrative boards shown to be arbitrary, illegal or capricious, and to impair personal or property rights; * * *,' and then quoted the opinion in *Hecht v. Crook*, 184 Md. 271, 280:

> 'Courts have the inherent power, through the writ of mandamus, by injunction, or otherwise, to correct abuses of discretion and arbitrary, illegal, capricious or unreasonable acts; but in exercising that power care must be taken not to interfere with the legislative prerogative, or with the exercise of sound administrative discretion * * * ' '

248 Md. at 300, 236 A. 2d at 286."

*Gould,* 273 Md. at 501-502. See also *Schneider v. Pullen,* 198 Md. 64, 68-69.

The message of *Gould* is clear. A legislature may not circumvent the system of checks and balances which guarantee that no branch of government, however designated, may be granted an untrammelled right arbitrarily to grant or withhold that which is derived from the people, be it due as a matter of right, sought as an aspiration, or bestowed as largess. A democracy does not recognize such monarchical discretion.

### Entitlement

Appellants attempt to distinguish *Gould* by noting that the petitioner there had established his *entitlement* to relief under the Criminal Injury Compensation Act which, although provided by the General Assembly as a matter of the State's moral responsibility, sets forth what persons

*shall* be eligible. Md. Code, Art. 26A, § 5 (a). Appellants argue that, by contrast, § 67 exists as a matter of legislative grace and prescribes neither positive duty nor discernible standard of relief.[7] Appellants contend that because appellees have voluntarily foregone their *entitlement* to review of their assessment by not protesting it before the date of finality, they can claim no *entitlement* under § 67.

This argument was apparently inspired by a law review interpretation of *Gould* which read into that opinion an "entitlement" prerequisite to review under the court's inherent powers:

> "If the Board had denied Gould's claim for compensation because it found that Gould was not the victim of a crime but a participant in it and Gould had claimed that this finding was not supported by substantial evidence on the record as a whole, the *Gould* Court plainly would not have reviewed the evidence because *Gould* limited its holding on the availability of judicial review to claimants whose eligibility as a crime victim under Section 5 of the Act had already been established. . . . However, the Court in *Gould* did determine that Gould possessed a sufficient personal right once he met the eligibility requirements of a crime victim. At that point his claim for compensation was transformed into a right protected by the Court's inherent power to review administrative actions for arbitrariness." Tomlinson, *Constitutional Limits on the Decisional Powers of Courts and Administrative Agencies in Maryland,* 35 Md. L. Rev. 414, 424 (1976).[8]

---

7. We note that no constitutional question has been raised by any of the parties questioning the right of the legislature to delegate an uncontrolled discretionary authority. Relying on the precedential silence of the Court of Appeals on that issue in both LaBelle and in Mont. Co. Council v. Supervisor, and because the parties here assiduously avoided that issue, so will we.

8. Appellants' reliance on Professor Tomlinson's interpretation of Gould is misleading. The sentence following the above quote is:

> "It appears, therefore, that the factual question of a person's eligibility for compensation could constitutionally be left to the

While noting that neither Judge O'Donnell nor the Court of Appeals added the "entitlement" impediment to the exercise of a court's inherent power, we find it unnecessary to decide that academic argument. By virtue of the tripartite agreement of the three parties provided by § 67, appellees *were* granted relief. Appellants' act presupposes appellees' "entitlement". Thus, the Court need not address that issue even if it is a condition precedent to relief under the trial court's inherent power. As Professor Tomlinson wrote:

> "At that point his claim for compensation was transformed into a right protected by the Court's inherent power to review administrative actions for arbitrariness." *Id.* at 424.

Indeed, to review or second-guess that factual determination of "entitlement" by the administrators involved, when to that extent their decision is not alleged to be arbitrary, is to exceed the scope of the inherent power of review.

We have pointed out that to invoke a court's inherent power of review in the absence of a statutory right, a petitioner must assert arbitrary, illegal, capricious or unreasonable acts such as constitute a breach of the exercise of discretion under the statute. See *Gould, supra,* at 513. But we hasten to add that while the circuit court is vested with jurisdiction upon such allegations, it may not be exercised for a petitioner's benefit unless he can carry the heavy burden of *proving* such arbitrariness. In the exercise of the court's inherent power, care must be taken not to interfere with the legislative prerogative, or the exercise of sound administrative discretion. See *Hecht v. Crook,* 184 Md. 271, 280-281.

---

Board subject to no judicial review whatsoever or at most to judicial review under an arbitrariness/no evidence standard." *Id.* at 424.

It is, therefore, quite clear that Professor Tomlinson recognizes the possibility that judicial review may be had, regardless of "entitlement", if the administrative action is arbitrary.

## Appellees' Summary Judgment

Both sides moved for summary judgment. The appellants contended that there were only two issues to be resolved:

> "1. The remedies provided by Article 81 for the contest of property assessments are *exclusive*, and therefore, the Petition should be dismissed.
>
> 2. Even assuming for purposes of argument that this Court has jurisdiction over this matter, the undisputed facts clearly and conclusively demonstrate that there has been no *unconstitutional* action." (emphasis added).

In a combined document both moving for summary judgment and opposing appellants' motion, appellees raised five issues. In short, these were:

> 1. The trial court had jurisdiction under the inherent power doctrine of *Gould*.
>
> 2. Appellants' actions under § 67 were arbitrary, capricious and illegal.
>
> 3. The combined sewer moratorium and assessment procedure amounted to an unconstitutional taking.
>
> 4. The sewer moratorium caused appellees' property to be "damaged" property under Art. 81, § 31 (f).
>
> 5. The Director of Finance was authorized to "refund" taxes although they had already been paid.

After holding that the court had jurisdiction under the inherent powers doctrine, the trial judge denied appellants' motion for summary judgment and granted appellees'. He reasoned that:

> "In *Heaps* v. *Cobb* the Court of Appeals succinctly and clearly defined arbitrary action:
>
> > 'The decision of this appeal depends on whether or not (1) on the undisputed facts the appellee

was entitled under the ordinance to the pension claimed, and (2) the appellant's refusal of the pension amounted to 'arbitrary' action — that is to say, was without any supporting evidence. As stated by the Supreme Court in the *Chicago Junction Case*, (citation omitted), 'To refuse to consider evidence introduced or to make an essential finding without supporting evidence is arbitrary action' '. *Id.* at 378.

Applying this standard, this Court finds that there are at least two instances of arbitrary action in this proceeding. The first and most obvious was the recommendation of the flat 25% reduction by the Supervisor of Assessments, which was adopted by the other two agencies without considering any evidence relating to the specific facts of the Clark case. The other arbitrary action was the selection of the 25% reduction figure. If the defendants in this action had been able to prove that the 25% reduction was arrived at by a careful survey of all the property affected by the sewer moratorium and represented some average figure pertaining to decreases in property value, then the use of this figure might survive the scrutiny of this Court. Such is not the case. The 25% figure was arrived at in a totally arbitrary manner, as demonstrated by the following passage from a memorandum dated November 16, 1971 from Garner V. Duvall, Supervisor of Assessments, to the Appeal Tax Court. This letter was an addendum to the motion for summary judgment filed by the Attorney General.

'. . . (T)his office has finally come to the conclusion that a fair and reasonable allowance for the sewer moratorium should be a maximum of 25%.

This percentage takes into consideration that the moratorium may last for a period of

three (3) years and using an 8% annual interest rate over the three-year period would be reasonable consideration in our judgment to arrive at an overall allowance of 25%. Therefore, you may want to reconsider your decision on the subject case.'

Of the two multipliers involved in arriving at the 25% figure, it is obvious that both were arrived at without any basis in fact, especially the 8% representing 'interest'. Presumably this is based on the income one would receive from a bank account *per annum* [9] but the connection between such an interest rate and the sewer moratorium's effects on property in Montgomery County is totally undemonstrated. The three year estimated duration of the sewer moratorium was also arbitrarily determined because it was based on no more than an educated guess as to how long the moratorium would be in effect.

While holding that the assessing authorities acted arbitrarily in arriving at the 25% abatement in this case, this Court is not saying that the 25% figure was *per se* unreasonable and must be either increased or decreased in any subsequent reconsideration of this matter but simply that there must be some basis in fact for any reduction ordered under Section 67 and that the determination must be made on a case by case basis, not by means of an arbitrary across the board figure."

It is here that the trial judge went astray. Assuming that the 25% figure conveyed by the Supervisor of Assessments to the Appeal Tax Court did carry on its face indicia of arbitrariness (which the court first asserts, then denies), such evidence would serve only to *deny appellants'* motion

---

**9.** Apparently, the court was taking judicial notice of an economic fact of life peculiar — if correct — to Montgomery County. We question both the fact and the right of the court to take judicial notice of it.

for summary judgment. It was not sufficient of itself to grant appellees' motion.

The letter the trial judge relied upon was simply a starting point in the § 67 process on prior cases of hardship caused by the sewer moratorium. It was issued by the Supervisor of Assessments after his analysis as an expert to establish a juncture from which the Appeal Tax Court could proceed, as the hearing authority. That is indicated by the date of the letter (9 months prior to appellees' protest) and by the language of the letter preceding the portion the trial judge quoted:

> " . . . *we wish to call to the Court's attention that after reviewing a number of situations similar to the subject,* this office has finally come to the conclusion that a fair and reasonable allowance for the sewer moratorium should be a maximum 25%." (emphasis added).

Testimony deposed by appellees from the former Chief Judge of the Appeal Tax Court showed that the 25% figure represented a uniform policy established to avoid further disparity of opinion even among experts. But uniformity and arbitrariness are not synonymous:

> "Let me describe it this way, and maybe this will answer your question.
>
> In the beginning, of course the existence of the sewer moratorium was novel and unusal [sic] and it created different reactions on the part of different people. My recollection is that in the very beginning the concurrence that might come from the Supervisor of Assessments, came, depending on whom the individual assessor was.
>
> Some assessors thought differently than others in regards to whether the sewer moratorium had any effect upon the value of property, and if it did, to what extent it should affect the property.
>
> Later on, the Supervisor of Assessments formulated the uniform policy in connection with

sewer moratorium cases. We knew after the time that that uniform policy was announced to us and began to be implemented that if the Tax Court felt greater relief was necessary or warranted, that it would not be concurred in if it went beyond the figure of 25 percent."

We do not think that the letter from the Supervisor is *conclusive* evidence upon which the trial court could base its holding that, as a matter of law, the "25% figure was arrived at in a totally arbitrary manner." To the contrary, it appears that the assessing expert who wrote the memo had reviewed similar situations, looked into the time prospects of the sewer moratorium, and utilized an interest factor 2 percent above the maximum legal rate of interest in Maryland as set forth in Md. Code, Art. 49, § 3 (and equal to the maximum allowed "under an agreement in writing between the lender and borrower").[10] We hold, therefore, that the trial judge erred when he held that appellees met the heavy burden they assumed by claiming, on their motion for summary judgment, that appellants' actions were arbitrary as a matter of law because they allegedly pulled the 25% figure from the air.

We also find that the trial judge erred factually, and erroneously relied upon a factual prerequisite not compelled by either statute or due process when he determined that the recommendation of the Supervisor:

> ". . . was adopted by the other two agencies without considering any evidence relating to the specific facts of the Clark case."

Nor do we find the quotation upon which he relied from *Heaps v. Cobb, supra,* apposite here, *i.e.*:

> " 'To refuse to consider evidence introduced or to make an essential finding without supporting evidence is arbitrary action.' "

Factually, appellees expressly admitted in response to appellants' demands for admissions, that they were afforded

---

**10.** Now found in Commercial Law, §§ 12-102, 12-103(a).

a hearing before the Appeal Tax Court on February 13, 1973, that one of appellees was present with counsel, that they were afforded the opportunity to present evidence, testimony and argument, and that they availed themselves of this opportunity but provided no expert evidence to counter the recommendation of the Field Supervisor that the assessment be reduced from $132,150 to $99,110. They also acknowledged receiving a copy of the Field Supervisor's memorandum to the Appeal Tax Court recommending the reduction, the last sentence of which indicates that he had given some degree of special attention on review to appellants.[11]

The judge's assumption that a tripartite hearing was required was equally misplaced. Sec. 67 is a hybrid statute created to apply to unforeseeable circumstances. Each party whose approval is required before relief can be granted under this section has a part to play related to his particular governmental role, and we find the procedure adopted in

11.

"MEMORANDUM

September 1, 1972

TO: Appeal Tax Court
FROM: William E. Gartner, Sr., CAE, Field Supervisor W.E.G. Sr.
SUBJECT: F. T. & G. J. Clark, RFD 2, Boyertown, Pa.;
9-01-769020, 5.61 Ac. Plat 8491;
Par A Hgwy Interchange
Land $132,150          Imps. $7600          Total $139,750

We wish to call to the attention of the Court the following information concerning subject account:

As the result of a letter dated July 17, 1972, from the Washington Suburban Sanitary Commission we recommend that the land assessment be reduced on the above referenced property from $132,150 to $99,110, with no change in the improvement assessment. This request is due to the sewer moratorium and should be effective with the 1972 levy year.

Since this office does not have the authority to change the assessment at this time, we are referring the matter to your Court for consideration and appropriate action under Section 67, Article 81, of the Maryland Code.

Enclosed is a photocopy of the worksheet and a letter from the Washington Suburban Sanitary Commission.

WEG:cs
Enclosures"

Montgomery County to be a reasonable procedural application of the statute. Since the legislature prescribed no procedure, the instant one is not the only conceivable means of dispensing discretionary relief, but it is an acceptable and reasonable one.

Considering the highly responsible and time consuming roles of Supervisor of Assessments and Director of Finance, it is inconceivable that the legislature intended that they hold hearings for every case brought to their attention under § 67. While each of these officers is concerned with alleviating injustice, each has his particular watchdog role to fulfill. The Assessor looks to his assessment, the Director watches over his budget and the Appeal Tax Court (or Property Tax Assessment Appeal Board) provides procedural due process protection to the taxpayer by public hearing.

The Supervisor of Assessments has the expertise to diagnose, and his access to special knowledge of the case provides a unique posture from which to recommend a prescription.

The purpose of "an appeal tax court" is apparent from the connotation given it by the statute authorizing its creation, Ch. 466, Laws of 1969, as well as that of its successor which calls for "a property tax assessment appeal board". See Ch. 784, Laws of 1973. Its very *raison d'etre* is to hear tax appeals related to real property assessments. See, *e.g.*, Art. 81, § 255 (b). Little imagination is required to perceive its role in the § 67 triumvirate.

Finally, the logical reason the legislature would require approval by the Director of Finance (or county treasurer) would be to establish an assurance that prospective abatements would not unduly affect the financial stability of the county. The requirement for his approval stands in the posture of a veto power.

We hold that the trial judge, having overlooked the Tax Appeal Court's hearing, also erred by holding, on appellees' motion for summary judgment, that the absence of a hearing by the Assessor and Director was arbitrary as a matter of law. We therefore reverse the judgment

summarily granted in favor of appellees on the issue of arbitrariness.

Appellants' Motion for Summary Judgment

The denial of appellants' motion for summary judgment, which we also vacate, is another matter. Appellants were clearly wrong as to their first issue relating to jurisdiction and, to that extent, the court's denial was correct. However, their second contention that:

> " . . . the undisputed facts clearly and conclusively demonstrate that there has been no un- constitutional action.",

was not decided by the court below and is one of the issues which must be decided upon remand. Md. Rule 1085.[12]

---

**12.** We note under the latter portion of that rule that it may be "desirable for the guidance of the court" if we suggest that the trial court again review all the evidence before it to determine if there is any evidence of arbitrariness favorable to appellees. We have indicated that the trial judge stated:

> " . . . that the 25% figure was [not] *per se* unreasonable. . . .",

and we do not disagree. We have pointed out the error in his opinion that all three agencies must consider the evidence relating to the specific facts of the Clark case. Neither the judge nor the appellees have pointed to anything indicating that the triumvirate made " . . . an essential finding without supporting evidence . . ."; which the Court in Heaps v. Cobb, 185 Md. at 378, noted was indicative of arbitrariness. To the contrary, the testimony deposed by appellees themselves appears to provide *some supporting evidence* that the figure was not arrived at arbitrarily.

For example, in addition to the testimony by the former Chief Judge of the Appeal Tax Court partially set forth in the body of the opinion, appellees also deposed a former supervisor in the assessment office of Montgomery County, who testified among other things that:

> "As I say, it was generally a practice, this 25 percent would represent approximately the amount of money or cost to install sewer line in front of the property.
>
> Let's put it another way.
>
> The presence of the sewer, or the absence of the sewer, would make approximately a 25 percent difference in its value."

That alone is *some* supportive evidence of an expert nature indicating that the 25% figure was not arbitrarily reached.

The trial judge may recall that he may grant *partial* summary judgment, Md. Rule 610 a 1, in favor of appellants based upon the arbitrariness issue, although it was raised in appellees' motion. Md. Rule 610 d 1.

Upon remand the trial court must still face the limited constitutional issue raised in both motions for summary judgment (raised in appellants' motion as issue number 2 and in appellees' motion as issue III) which, in the absence of submission by the parties,[13] we are proscribed by Md. Rule 1085 from considering on appeal. See *Montagna v. Marston*, 24 Md. App. 354, 362. We also note that appellants' issue IV was not mentioned by the court and should be met upon remand.

The refund issue, argued here and decided below, has become premature for us to answer in light of appellees' questionable entitlement. We note in bypassing that issue, however, that it would be incongruous for the legislature to provide for relief under § 67, and not to have anticipated that some authority to refund existed. See, *e.g.*, Art. 81, § 214 (c).

In making the determinations that were left open by virtue of his rulings on summary judgment, the trial judge may compel such assistance from the parties by brief, argument or otherwise as he may require for a proper consideration of the pending questions. *Montagna, supra,* at 362.

> *Case remanded pursuant to Md. Rule 1071.*
> *Costs to be divided equally among all parties.*

---

**13.** Md. Rule 1075 c states:

"If a judgment or part of a judgment is reversed and the case remanded for a new trial, the parties may by agreement in writing filed with the Clerk submit the case to this Court for final adjudication and judgment upon the facts set forth in the record. Upon such submission by the parties, this Court will pass upon all questions of fact and of law arising in the case and enter final judgment thereon."