## MAHER W. ISHAK v. FALLSTON GENERAL HOSPITAL AND NURSING CENTER ET AL.

[No. 456, September Term, 1981.]

*Decided January 8, 1982.*

The cause was argued before THOMPSON, LOWE and MASON, JJ.

*Joseph A. Schwartz, III,* with whom were *Francis S. Brocato* and *Brocato & Schwartz* on the brief, for appellant.

*John J. Buckley, Jr.,* with whom were *Brendan V. Sullivan, Jr., Williams & Connolly, James M. Kramon, Kramon & Graham, P.A., Alva P. Weaver* and *Lord, Whip, Coughlan & Green* on the brief, for appellees.

LOWE, J., delivered the opinion of the Court.

Through an opinion lacking excellence only in that it was wrong,[1] the judge of the Circuit Court for Harford County sustained, without leave to amend, demurrers to a declaration filed by the appellant, Dr. Maher W. Ishak, against Fallston General Hospital and Nursing Center which, among others, are appellees here. The opinion synopsized that which the declaration had detailed in a thirty-eight paragraph recitation:

> "Although somewhat bereft of specific facts, the declaration in this case attempts to paint an unpleasant picture of medical politics. The Plaintiff, Dr. Maher Ishak, a physician and surgeon was a member of the 'courtesy physician staff' of Fallston General Hospital beginning in July of 1977 but at the end of 1978 the hospital declined to renew his staff privileges after they had expired as of December 31, 1978. The pretext for this non-renewal was the Hospital's contention that Ishak had not paid his courtesy staff dues on time, although the first notice that Ishak received that any courtesy staff dues at all were being assessed was on Monday, December 11, 1978. On

---

1. In State Dep't of Assess. & Tax. v. Clark, 34 Md. App. 136, 141-142 (1976), we were similarly impressed with an opinion we felt was wrong. But we, too, were wrong. State Dep't of A. & Tax. v. Clark, 281 Md. 385 (1977).

Wednesday, December 13, 1978 the medical executive committee, an advisory body to the Hospital's board of directors, convened without any notice to Ishak and recommended to the executive board of the Hospital that Ishak be denied reappointment to the courtesy staff because he had failed to pay his dues. Completely unaware of the action taken by the medical executive committee, Ishak sought to obtain clarification of the dues situation on December 14, 1978 without success but on the following Monday, December 18, he was informed that he had indeed been assessed for dues. But he was not informed at that time either that the medical executive committee had previously recommended that he be denied reappointment or that the Hospital's board of directors was to meet the following day, December 19, to consider the medical executive committee's recommendation. The board of directors accepted the recommendation of the medical executive committee at the December 19 meeting, with the result that Dr. Ishak was not reappointed to the medical staff for the year 1979.

Still ignorant as to what had transpired Dr. Ishak sent in his check for dues on Thursday, December 21, but on Wednesday, December 27, he received a letter from the Hospital, dated December 22, 1978, informing him of the board of directors actions and, on the same day, he received back his dues check. Others who had paid their dues late were reinstated but Dr. Ishak's attempts, via the appellate review machinery of the Hospital, to achieve the same results were given short shrift.

Underlying this action by the Hospital, says Dr. Ishak, was the 'fierce economic rivalry' between Fallston General Hospital and Harford Memorial Hospital. Dr. Ishak was on the staff of both hospitals and had the temerity to express concern to the authorities at Fallston General Hospital

regarding certain rumors to the effect that Fallston may have encouraged certain ambulance services to bring emergency patients to Fallston rather than to the nearest hospital. He also questioned the political activities of the principal owner of Fallston (a proprietary hospital). Because he had thus 'made waves' and because of his association with Harford Memorial Hospital, the Hospital retaliated by denying him reinstatement under the contrived pretext of not paying his dues.

This, says the Plaintiff, amounts to a malicious breach of the Hospital's contractual duty to the Plaintiff wherein the Hospital failed to seasonably notify him of the requirement of courtesy staff dues, to accept the dues when timely paid, and to accord him his procedural rights. Thus, he contends, he is entitled to compensatory damages for the economic loss he has suffered and for punitive damages for the malicious way in which it was all done. In addition, the Court is asked to grant an injunction ordering his reinstatement to the courtesy staff."

The judge then proceeded to set forth the appellees' five asserted grounds for demurrer.

"Assuming, as I must at the demurrer stage, that the factual allegations of the declaration are true and even assuming that some of the conclusory ones are likewise both true and proper, the question therefore is whether or not a cause of action has been stated. [See *Schwartz v. Merchants Mort. Co.*, 272 Md. 305, 307-308 (1974)]. All the Defendants demur.[2] The grounds for the demurrer are:

1. The declaration showed nothing on its face to show that Fallston General did not have the right,

---

**2.** The Defendants are Fallston General Hospital and Nursing Center, a proprietary for-profit hospital; Fallston Medical Complex Operating Corporation, the general partner in Fallston General Hospital Limited Partnership, which owns the real estate; and Medi-Systems, Inc., the entity actually operating the Hospital.

like all other private hospitals, to exclude any physicians from its facility and that such exclusion was not within the sound discretion of the Hospital's management.

2. That the Plaintiff has no vested right, contractual or otherwise, either to membership on the staff or to reappointment to the staff for the year 1979.

3. That the Defendants had no obligation to follow their own by-laws in declining to reappoint the Plaintiff.

4. That there were no violations of the by-laws anyway.

5. That the medical staff by-laws specifically contain a waiver clause denying Plaintiff legal recourse, and that the Hospital's board of directors had the final say in the matter of reappointment to the courtesy staff. The demurrer also says that the Hospital's actions are beyond judicial review or interference which, of course, is like saying the declaration is demurrable because it is demurrable.

In his discussion of these matters, the judge did not explicitly state which, if any, were at the root of his ruling. Implicitly, he indicated his agreement with all but the fifth ground, although he rested his opinion primarily upon the autonomy granted by common law to private hospitals in deciding whether to renew physicians' staff privileges.

"As to the first ground of the demurrer, it is unclear to me whether or not the failure to show that Fallston General did not have the right to exclude physicians is not really asking the Court to make the Plaintiff anticipate matters of defense. It is, however, clear to me that the allegations of the declaration, taken at their face value, show that the exclusion was not within the sound discretion of the Hospital's management because the narrated course of conduct, if true, shows no considered exer-

cise of discretion at all. But the main line of defense is that the Plaintiff had no vested right, contractual or otherwise, to membership on the Hospital's courtesy physicians staff or to reappointment thereto. This proposition is in accord with the Maryland authorities as well as those elsewhere, *Levin v. Sinai Hospital of Baltimore City,* 186 Md. 174 (1946), *Glass v. Doctors Hospital,* 213 Md. 44.

The Defendants also say that whether or not the Hospital violated its own by-laws is immaterial and, anyway, the by-laws were not violated. In short, in a private hospital there is no right to due process because the procedural rules are neither contractual obligations of the hospital (there being no contract to begin with) nor required by any other principles of law. *Manczur v. Southside Hospital,* 183 N.Y.Supp. N.Y.S.2d 960 (1959), *Weary v. Baylor University Hospital* (Tex. C.A. 1962, 360 SW 2d. 895). Although one might then ask why a hospital should bother at all with by-laws, the courts are under no duty or compulsion to lend legal forces to the rules and regulations of private concerns unless by contract or statute such rules and regulations are given the force of law.

Furthermore, as the Defendants point out, the declaration referred to the Hospital's by-laws but in fact only cites the by-laws of the medical staff. The Hospital by-laws, say the Defendants, are the controlling provisions because the medical staff is merely an advisory body. In short, the declaration cites only those by-laws which favor the Plaintiff's position and do not cite the governing by-laws (or even the unfavorable portions of the medical staff by-laws). The Plaintiff cites formal procedures of the medical staff by-laws which apply only to the 'initiating procedure to suspend or revoke staff membership or curtail existing clinical privileges' and such provisions are plainly inapplicable to the

matter of renewing privileges, again citing *Glass v. Doctors Hospital,* 213 Md. at 61.

As if this were not enough, Defendants then go on to say that any procedural deficiencies were minimal and that the safeguards in question were substantially complied with."

But the autonomy granted to private hospitals exists only in the absence of statutory or contractual obligations of the hospital, such as where the hospital expressly contracts individually with physicians, *cf. Glass, supra* (where doctor waived contract right to practice in hospital by executing release), *or implicitly accords staff members certain rights* through its constitution or bylaws. In *Levin, supra* at 180, the Court of Appeals explicitly stated that:

"In Maryland a court of equity [3] may properly grant injunctive relief to protect a physician in his right to treat his own patients in a hospital where its constitution and by-laws accord him that right, and also to pass upon the validity of asserted amendments to the constitution and by-laws for the purpose of determining his right to such relief. *Stevens v. Emergency Hospital of Easton,* 142 Md. 526, 121 A. 475 [(1923)]."

Appellant concedes that he claims no contractual or vested rights other than those expressly granted to him by the hospital. The heart of his contention, as stated in his declaration, is that he has been denied the procedural rights granted to him under the bylaws of the hospital as a member of the "Courtesy Physician Staff".

---

3. We note here that although appellant has brought this suit at law, rather than in equity, he is entitled under Md. Rule BF40 to ask for an injunction as ancillary relief to his claims at law. The court must still apply the same tests and standards as would be applicable in an action in equity. Md. Rule BF43. At oral argument, appellant indicated that he may have abandoned his claims for damages, leaving only his claim for injunctive relief. If such is indicated of record upon remand, then the lower court should transfer the case to equity pursuant to Md. Rule 515.

"Under the By-laws, denial, curtailment, and revocation of staff privileges, including those enjoyed by courtesy physician staff, were governed by Article VIII of the By-laws. Under the terms of Article VIII, Plaintiff enjoyed rights of due process with regard to any action to terminate or fail to renew his courtesy staff membership. Under the terms of Article VIII, Plaintiff also enjoyed a reasonable expectation of a continuing beneficial relationship with Fallston General Hospital and Nursing Center. Article VIII of the By-laws is attached hereto as Exhibit 1."

Appellant appended to his declaration only "Article VIII of the By-laws". Although the judge found that Article to be restricted by its terms to disciplinary dismissals, it expressly also applies:

"in the event that the Medical Executive Committee shall not recommend a member for reappointment, or shall recommend a member for reappointment but with curtailed clinical privileges or with limitations on the exercise of his existing clinical privileges . . . ." Art. VIII, § 2, ¶b.

As the judge's opinion points out, the appellees contend that the bylaw cited is not a hospital bylaw as such, but only a bylaw of the medical staff. That, of course, is not apparent in the declaration, the allegations of which must be admitted as true for demurrer purposes. It appears, therefore, that the force, efficiency, and application of the bylaw is solely a matter of defense at trial, not an allegation by the defendants to be conclusively accepted on demurrer. It is the allegations of the declaration that are accepted as true, not of the answer. The same is true regarding the issue of substantial compliance with the procedural safeguards. Such allegations of appellees are not accepted as fact; they are subject to proof as a defense at trial.

The court appeared to respond correctly in its opinion to

appellees' contention that whatever rights the bylaws gave with one hand by Art. VIII, § 2, they took back with the other hand through the waiver provision in Art. VIII, § 7.

> "The Defendants also point out that Section 7 of Article VIII of the medical staff by-laws provides that the medical staff waive any rights of personal redress against the medical staff, the appellate review committee, any employee of the Hospital and Nursing Center, the Governing Board, or any member thereof, for *disciplinary* action taken under this Article [Emphasis added]. The short answer to this contention of the Defendants is that, just as they have said earlier, disciplinary action is not involved. What is involved is that non-renewal of courtesy staff privileges."

We note that along with the absurdity of appellees' interpretation, § 7 simply does not waive the right to litigate a denial of the rights afforded. It waives only the right of personal redress arising out of "disciplinary action" in regard to reports, information or accusations filed.

> "8/7/a Any report, information or accusation filed, or any action recommended under Article VIII, shall be deemed a privileged communication. Each member of the Medical Staff waives any right of personal redress against the Medical Staff, the appellate review committee, any employee of the Hospital and Nursing Center, the Governing Board or any member thereof, for disciplinary action taken under this Article."

Even if it is not apparent that this waiver is restricted to such actions as slander or libel arising from accusations, etc., filed in "disciplinary actions," neither is it apparent that such waiver would apply to a nonrenewal procedural violation. In short, even if § 7 is ambiguous, it is not for us to interpret at this stage, as a matter of law, but should be interpreted upon submission to a fact-finder at trial. The judge was correct in refusing to consider it upon demurrer.

It may seem that we are damning the judge's opinion with faint praise when we acknowledge its commendable articulation, while pointing to its defects, however we cannot restrain ourselves from further comment upon its closing dicta. The judge philosophized by concluding that:

> "Perhaps this seems harsh and unjust. But the Courts cannot right every wrong, real or imagined, which exists in the world. They cannot indiscriminately interpret and enforce the internal regulations of private organizations. They do not even have to involve themselves with many governmental appointments of political nature and when it comes to the controversies within a learned profession, such as medicine, the Courts, like the Peers in Iolanthe 'should not itch to interfere in matters which they do not understand'."

In a footnote, he philosophically enlarged upon that which he had mistakenly gleaned to be the law, providing a hands-off rationale for a brother "learned profession:"

> "Horrifying and hypocritical as it may sound to moralists, there are times when the denial of an appointment for flimsy, contrived or 'political' reasons is kinder to the victim than proceedings in which such denial is based on the victim's alleged shortcomings or lack of qualification. A person is less likely to be damaged financially or emotionally if he is the victim of some dirty deal than if his competence or character is called into question. I do not mean in any way to imply that such would have been the case here; the only purpose of the observation is to add more weight to the observation that in the course of human events there are many times when it is best for the courts to let sleeping dogs lie."

Proverbially, the judge was right (at least generally) that unkindness per se has no remedy at law. But Maryland law provides no sanctuary or immunity for principals who do not

recognize the strictures that they impose upon themselves. *See Stevens, supra.* While sacred calves may have once been immunized at common law, such doctrines are subject to modification by statute or by judicial decision where the Court finds that it is no longer suitable to the circumstance of the people. *Cf. Adler v. American Standard Corp.,* 291 Md. 31, 42-43 (1981). If a physician and a hospital cannot heal the wounds they have inflicted upon each other, courts will provide a room where they may operate exploratorily; but as in medicine, the scars left may cause that remedy to have been worse than the wound.

*Judgment reversed.*
*Costs to be paid by appellees.*