FRIEDMAN, ET AL. *v.* MONTGOMERY COUNTY COUNCIL,

[No. 427, September Term, 1966.]

198

*Decided June 26, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Robert L. Burchett* and *James R. Miller, Jr.,* with whom
were *Miller, Miller & Canby* on the brief for appellants.

*Douglas H. Moore, Jr., Deputy County Attorney,* with whom
was *David L. Cahoon, County Attorney,* on the brief for ap-
pellee.

OPPENHEIMER, J., delivered the opinion of the Court.

The appellants asked the Montgomery County Council to re-
zone their property in Bethesda, consisting of some 26,000
square feet, from its existing R-60 zone (one-family Detached
Residential) to the C-2 zone (General Commercial). The tech-
nical staff of the Maryland-National Capital Park and Planning
Commission recommended denial of the application; the Mont-
gomery County Planning Board, in a three to two decision, dis-
agreed with the technical staff and recommended approval; the
Montgomery County Council (sitting as a District Council for
that portion of the Maryland-Washington Regional District lo-
cated in Montgomery County) denied the request for the re-

zoning. The appellants appealed to the Circuit Court, and Judge Anderson affirmed the Council's decision. In this appeal, the appellants contend that the Council's action was discriminatory, arbitrary and capricious, and resulted in an unconstitutional confiscation of the appellants' property.

The subject property is located on the southeast corner of the intersection of Wisconsin Avenue and Chelsea Lane. The nature of the surrounding land uses are set forth in the report of the technical staff as follows:

> "The subject property has frontage along both Wisconsin Avenue and South Chelsea Lane. The property is undeveloped and partially wooded. The property is bounded to the east by well maintained brick single-family residences which front along South Chelsea Lane. Further to the east there is continued single-family development. To the north, across North and South Chelsea Lane, there are two single-family residences and Glenbrook Parkway. To the west and northwest across Wisconsin Avenue there is a large tract of land, the National Institutes of Health. To the southwest across Wisconsin Avenue is the Governor's House Motor Hotel and accompanying parking facilities. The subject property is bounded to the south by a two story brick and frame single-family residence, a single-family structure which has been converted for use as a real estate office and an antique shop and a well maintained two story single-family residence, a portion of which has been converted for use as a doctor's office. To the south across Chestnut Street is a private parking lot and a restaurant. The property immediately south of this application is zoned C-2. The northern boundary of this C-2 Zone is precisely opposite the northern boundary of commercial zoning on the west side of Wisconsin Avenue."

The technical staff pointed out that the requested reclassification is not in conformance with the Zoning Plan adopted in 1956, and stated:

"The land involved in this application and the land north to Jones Bridge Road could be utilized by single-family dwellings or for doctor's or dentist's offices in their homes, and also this is an excellent location for a scientific society headquarters. Single family dwellings have been established in this area for some time and there has been no change in the character of development which would justify the requested change."

The majority of the Planning Board was of the opinion that the abutting C-2 property to the south had set the pattern for commercial development as to the subject property.

At the hearing before the Council, the appellants produced testimony as to the commercial changes in the neighborhood and the unfeasibility of developing the property of single-family residences. Area residents, speaking in opposition, testified that the extension of commercial zoning in the neighborhood would create a serious traffic problem and pave the way for still more commercial reclassifications. The Council in its opinion denying the reclassification found that the commercial reclassification of the existing property to the south did not constitute sufficient change in the character of the neighborhood to justify the requested rezoning and that to grant the application "would be out of character with the adjacent residential community."

In his well-considered opinion affirming the action of the Council, Judge Anderson referred to the testimony as to the nature of the residential community which had existed adjacent to the subject property for many years, the adverse effect upon that community which the commercial rezoning would entail, and the reasonableness of the action of the Council in terminating the commercial rezoning of the property to the south at a point just opposite the northern boundary of the commercial property on the other side of Wisconsin Avenue. He found, on all the testimony, that the action of the Council was not discriminatory, arbitrary or capricious, but that, on the contrary, the matter was fairly debatable. We agree. *Park Construction Corp. v. Board of County Comm'rs,* 245 Md. 597, 604, 227 A. 2d 15 (1967), and cases therein cited. In zoning and rezon-

ing, the line must be drawn somewhere, *County Comm'rs v. Miles,* 246 Md. 355, 228 A. 2d 450, 463 (1967), and cases therein cited, and there was substantial evidence to show the reasonableness of the drawing of the line in this case.

To support their contention that the denial of the requested classification was confiscatory, at the court trial of the case, the appellants adduced the testimony of two expert witnesses who had not testified before the Council. Objection was duly made to this testimony, but it was admitted. The testimony of the experts was limited to conditions as they existed at the time of the proceedings before the Council and the witnesses' conclusions therefrom. One witness, president of a building and loan association, was of the opinion that the appellants' property could not reasonably be developed for single-family housing. The other witness, a real estate broker and appraiser, testified that he would not recommend single-family residential financing of a constuction nature or a permanent nature for the property.

We do not reach the question of whether this testimony was properly admitted. Cf. *Suburban Properties, Inc. v. Rockville Council,* 241 Md. 1, 5, 215 A. 2d 200 (1965), and *Poe v. Baltimore City,* 241 Md. 303, 311, 216 A. 2d 707 (1966). Assuming, *arguendo,* that the admission was proper, we agree with Judge Anderson that the appellants have not met the burden of showing that the denial of the reclassification precludes the use of their property for any purpose to which it is reasonably adapted. As the judge noted, the report of the technical staff stated that under the existing classification the property can be utilized not only for single-family dwellings but also for doctor's or dentist's offices in their homes, and for a scientific society headquarters.

What Judge Barnes, for the Court, said in *Tauber v. Montgomery County Council,* 244 Md. 332, 223 A. 2d 615 (1966), is not only pertinent; it is determinative:

"The appellants also contended below and before us that they were denied all reasonable use of the subject property by the existing R-60 zoning and were thus deprived of their property without due process

of law or the payment of just compensation. In the R-60 zone, in addition to one-family detached dwellings, various institutional uses are permitted, including churches and other places of worship, libraries, museums and publicly owned buildings. Although there was evidence indicating that the subject property could not be reasonably used for one-family detached dwellings, it is clear from our decisions that to establish unconstitutionality of existing zoning because of a denial of *all* reasonable use of the subject property, the owner must establish that the property cannot reasonably be used for any of the permitted uses in the existing zone. *Mayor and C. C. of Baltimore City v. Borinsky,* 239 Md. 611, 624, 212 A. 2d 508, 515 (1965). This the applicants failed to do." 244 Md. at 337.

*Order affirmed; costs to be paid by appellants.*