## THE COMMISSIONERS OF CAMBRIDGE
### *v.* HENRY ET AL.

[No. 41, September Term, 1971.]

*Decided November 11, 1971.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Richard M. Matthews* for appellant.

*Edward H. Nabb,* with whom were *Harrington, Harrington & Nabb* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

The City of Cambridge proposed to build in a waterfront park adjacent to a public marina, both owned by the City, a structure 40 x 24 feet, 22 feet high, of customary materials, to contain on the second floor living quarters for a resident dockmaster and on the first floor a small laundry room and men's and women's shower rooms and toilets (all for the primary convenience of boat slip lessees), and a small office in which the dockmaster could handle the leasing of slips and the collection of rentals and other transactions incident to the marina, and a small storage area for marine supplies. When a permit for the construction of the structure was issued by the City engineer and approved by the town Commissioners, W. Laird Henry, Jr. (a former judge of the Circuit Court for Dorchester County) and several of his neighbors filed a bill to enjoin the proposed construction, claiming that (1) the selection of the site was an arbi-

trary and capricious exercise of administrative discretion (because it would impose on the complainants "an immediate substantial and irreparable injury") ; (2) the proposed location and proposed use would be in violation of the Zoning Ordinance of Cambridge (Ordinance No. 310 adopted May 18, 1964 pursuant to the authority conferred by Art. 66B of the Annotated Code of Maryland as it stood in 1964) (because (a) the site was in an R-4 zone in which commercial uses are not permitted, (b) the matter should have been referred to the Board of Appeals, and (c) no offstreet parking was to be provided) ; (3) the proposed facility would create a public nuisance and safety hazard (because of the lack of parking space) ; and (4) the proposed facility would place an unreasonable burden on the complainants (because "it would depreciate the value" of their property and "unnecessarily interfere with their enjoyment of their said property as the same has been zoned and protected by the law").

Judge Mace enjoined the construction as prayed. We think he erred in so doing. As we see it, the complainants offered no probative evidence that the selection of the proposed site was an arbitrary, capricious or unreasonable exercise of power or discretion or that the building or its uses would constitute a nuisance or, indeed, that the value of the properties of the complainants would be depreciated. The matter comes down to whether the building or its proposed uses would be in violation of the zoning ordinance, the question decided by Judge Mace in favor of the complainants. The zoning ordinance provides that such a question is to be decided initially by the Board of Appeals set up by Art. XXII of the ordinance, with statutory judicial review under Art. XXIII of the ordinance by the Circuit Court, if an appeal from the Board is noted, and a similar review by the Court of Appeals. Article XXIV provides that before any building is constructed in Cambridge, an application supported by plans and specifications shall be submitted to the City Engineer and: "If the application conforms in all re-

spects with the requirements of this Ordinance, the City Engineer shall approve and certify same to The Commissioners of Cambridge for the issuance of the permit." The testimony seems to indicate that the practice of the Commissioners is to formally approve a permit in the same fashion as if they were enacting a law and that the practice was followed in this case.

Section 2 (1) of Art. XXII of the ordinance gives the Board power: "to hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of this Ordinance." Section 3 provides:

> "Appeals to the Board of Appeals may be taken by any person aggrieved, or by any officer, department, board or bureau of the municipality affected by any decision of the City Engineer. Such appeal shall be taken within a reasonable time, as provided by the rules of the Board, by filing with the City Engineer and with the Board of Appeals a notice of appeal, specifying the grounds thereof. The City Engineer shall forthwith transmit to the Board all of the papers constituting the record upon which the action appealed from was taken."

We have consistently adhered to the rule recently restated in *Agrarian, Inc. v. Zoning Inspector of Harford County,* 262 Md. 329, 332, as applicable in zoning cases, that:

> "It is well established that a claimant ordinarily must seek to redress the wrong of which he complains by using the statutory procedure the legislature has established for that kind of case, if it is adequate and available, and that if he is unsuccessful and wishes aid from the courts, he must take judicial appeals in the manner the legislature has specified rather than

by seeking to invoke the ordinary general jurisdiction of the courts."

That rule is controlling here. The trial court should have dismissed the case and relegated the complainants to their statutory appeal to the Board of Appeals. We will now do this.

If an appeal is taken to the Board, it should first consider and decide, *Poe v. City of Baltimore,* 241 Md. 303, 305, whether the City of Cambridge is or is not bound by the terms of the zoning ordinance. The cases often have held, as the text writers point out, that generally a governmental body that has enacted a zoning law is not itself bound by that law. See *Nehrbas v. Incorporated Village of Lloyd Harbor* (N.Y.), 140 N.E.2d 241, 242, in which Judge Fuld for the Court said:

> "In the very nature of things, a municipality must have the power to select the site of buildings or other structures for the performance of its governmental duties. Accordingly, it necessarily follows, a village is not subject to zoning restrictions in the performance of its governmental, as distinguished from its corporate or proprietary, activities."

See also 2 Metzenbaum, *The Law of Zoning,* 1280 (2d ed. 1955) ; 2 Rathkopf, *The Law of Zoning and Planning,* Ch. 53 (3rd ed. 1966) ; Annotation, 61 ALR 2d 973, § 4.

If Cambridge is not bound by the zoning ordinance, its right to erect the proposed building seems unimpaired by anything in the record before us. If Cambridge is bound by the ordinance, the Board must consider whether the complainants are persons aggrieved within the meaning of the ordinance. If they are, it should then consider whether the park is a non-conforming use which legally could contain the proposed building since the park was authorized by and put into operation under Ch. 197 of the Laws of 1929 and zoning did not come to Cambridge until well after that time.

The Board could also consider whether the park is not a permitted use, which could legally host the proposed building and uses in the R-4 zone in which it is located, since a park is in terms a permitted use in an R-1 zone, and uses permitted in an R-1 zone are permitted in R-2 zones, and those permitted in R-2 zones are proper in R-3 zones, and those authorized in R-3 zones are permitted in R-4 zones (as are an "accessory building or use customarily incidental to any of the above uses * * *").

The Board, further, is given power by Art. XXII, Sec. 2 (3) of the ordinance:

"To authorize upon appeal in specific cases such variance from the terms of the Ordinance as will not be contrary to the public interest, where, owing to special conditions, the enforcement of the provisions of the Ordinance will result in unwarranted hardship and injustice, but which will most nearly accomplish the purpose and intent of the regulations of the zoning plan."

If it is found that the City cannot proceed apart from the ordinance, or within the general provisions of the ordinance, it would appear that it might proceed under Art. XVI of the ordinance entitled "Special Use Regulations" to grant itself under Sec. 1 of Art. XVI a special use permit for a "public or government building" after complying with requirements of Sec. 2 of Art. XVI.

*Decree reversed, and bill dismissed, without prejudice to the rights of the appellees to appeal to the Board of Appeals, costs to be paid by appellees.*