## STATE DEPARTMENT OF ASSESSMENTS AND TAXATION ET AL. *v.* FITZHUGH T. CLARK ET UX.

[No. 23, September Term, 1977.]

*Decided November 4, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Kaye T. Brooks, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant Department of Assessments and Taxation et al. *H. Christopher Malone, Assistant County Attorney,* with whom were *Richard S. McKernon, County Attorney,* and *Robert G. Tobin, Jr., Deputy County Attorney,* on the brief, for appellant Director of Finance for Montgomery County, Md.

*Murray L. Deutchman,* with whom were *Bullard & Deutchman, P.A.* on the brief, for appellees.

ORTH, J., delivered the opinion of the Court.

This case is before us on a writ of certiorari to review a judgment of the Court of Special Appeals entered in *State Dep't of Assess. & Tax. v. Clark,* 34 Md. App. 136, 147, 367 A.

2d 69 (1976). The petition for the writ presented this question:

> Whether a circuit court may exercise jurisdiction over a declaratory judgment action to review the gratuitous decrease of a final *ad valorem* assessment on real property by the Supervisor of Assessments, the Property Tax Assessment Appeal Board and the Director of Finance pursuant to Section 67, Article 81, Annotated Code of Maryland?

I

At the time this litigation arose, Maryland Code (1957, 1975 Repl. Vol.) Art. 81, § 67 [1] read in relevant part:

> The final assessing authority, the supervisor of assessments and the county treasurer (in Montgomery County the director of finance).of each county and in Baltimore City, the city solicitor, and the director of the department of assessments, . . . may by an order, decrease or abate an assessment *after the date of finality* for any year, whether a protest against said assessment was filed before the date of finality or not, in order to correct erroneous and improper assessments and to *prevent injustice*, provided, that the reasons for such decrease or abatement shall be clearly set forth in such order.[2] (Emphasis added).

The circumstances surrounding the litigation are not disputed. In 1970 a parcel of ground in Montgomery County was rezoned on the initiative of the owners, Fitzhugh T. Clark and Geraldine J. Clark, his wife (appellees), from the classification of rural-residential to multiple family,

---

1. Hereafter sections cited are to Code (1957, 1975 Repl. Vol.) Art. 81, Revenue and Taxes, unless otherwise indicated.

2. Section 67 was thereafter twice amended. Acts 1975, ch. 586, designated the former provisions as subsection (a) and added a subsection (b), the provisions of which are not material to this case. Acts 1977, ch. 220, deleted the "final assessing authority" from subsection (a).

medium density residential. In 1971 the assessment of this real property for tax purposes was substantially increased for the 1972 tax year because of the rezoning and a general reassessment. Appellees did not protest, and the assessment became final on 1 January 1972. In· May 1972 the Washington Suburban Sanitary Commission imposed limitations on new authorizations for sewer extensions and new connections to existing sewer lines (the sewer moratorium) in parts of Montgomery County, including appellees' land. On 29 August 1972 appellees wrote the Supervisor of Assessments for Montgomery County requesting that a reassessment of their property, to be effective for the next six month period, be made in view of the sewer moratorium. The Supervisor, recommending that the assessment for the taxable year 1972 be reduced 25%, sent the letter to the Appeal Tax Court for Montgomery County [3] for "consideration and appropriate action" under § 67. Upon a hearing at which appellees appeared with counsel and presented evidence and argument, the Appeal Tax Court entered an order on 15 February 1973 decreasing the land assessment 25%. The Supervisor of Assessments signed the order on 22 February. The order and supporting documents were sent to the Director of Finance for Montgomery County who approved it on 23 February upon his independent decision that the decrease was proper. By letter dated 7 March the Appeal Tax Court notified appellees of the order abating the assessment. On 9 April 1973 appellees appealed to the Maryland Tax Court which dismissed the appeal by its order of 21 August 1974. Appellees noted an appeal from the order of dismissal to this Court, but dismissed it on 1 August 1975. *See Mont. Co. Council v. Supervisor*, 275 Md. 339, 340 A. 2d 302, decided 26 June 1975. In the meantime, on 11 April 1973, appellees filed an action in the Circuit Court for Montgomery County, which, upon amendment, named the

---

3. The Appeal Tax Court for Montgomery County was "the final assessing authority" designated in § 67. An appeal tax court for each county was authorized by Acts 1969, ch. 466, and was made mandatory by Acts 1973, ch. 784 under the designation "Property Tax Assessment Appeal Board."

Director of the State Department of Assessments and
Taxation, the Supervisor of Assessments for Montgomery
County, the Property Tax Assessment Appeal Board for
Montgomery County, and the Director of Finance for
Montgomery County (appellants) as defendants. The action
sought a declaratory judgment (1) enjoining appellants
from collecting taxes levied upon appellees' property without
providing them with the opportunity for a rehearing on the
question of the value of their property as affected by the
sewer moratorium, and (2) declaring § 67 unconstitutional
*as applied to appellees* in that it violated their rights to equal
protection and due process of the law and amounted to a
taking without just compensation. The action was disposed
of by the trial court upon motions for summary judgment.
By order of 18 February 1976, the court denied the motions
for summary judgment filed by appellants and granted the
motion filed by appellees "to the extent that these
proceedings are hereby remanded to the Supervisor of
Assessments for Montgomery County, the Director of
Finance for Montgomery County and the Property Tax
Assessment Appeal Board for such further proceeding under
Article 81, Section 67 of the Annotated Code of Maryland as
may be necessary, consistent with the views expressed in
this opinion . . . ." Appellants appealed to the Court of
Special Appeals.

The motions for summary judgment included a common
question — the jurisdiction of the Circuit Court for
Montgomery County to review § 67 proceedings. Appellants
contended that the trial court had no jurisdiction because
"[t]he remedies provided by Article 81 for the contest of
property assessments are exclusive. . . ." Appellees claimed
that the court had jurisdiction under its inherent power. The
trial court held that it had jurisdiction. The Court of Special
Appeals agreed. *State Dep't. of Assess. & Tax. v. Clark*, 34
Md. App. at 147. Appellees had also asserted in their motion
for summary judgment that appellants' action under § 67 in
arriving at the abatement of the assessment had been
arbitrary, capricious and illegal. The trial court was in
accord with this view but the Court of Special Appeals was

not. Finding that the court erred in ruling as a matter of law that the action of the taxing and fiscal authorities in abating the assessment was arbitrary, it reversed "the judgment summarily granted in favor of appellees on the issue of arbitrariness," *id.* at 154-155, and "also vacate[d]" the denial of the motions for summary judgment of appellants, *id.* at 155. It remanded the case "pursuant to Maryland Rule 1071." Upon petition of appellants, we ordered the issuance of a writ of certiorari.

## II

### (a)

As first enacted by Acts 1939, ch. 294, the Uniform Declaratory Judgments Act (UDJA) did not contain the requirement that when a special statutory remedy exists it must be followed. Its principle, however, was recognized and applied by this Court. *Tawes, Comptroller v. Williams,* 179 Md. 224, 17 A. 2d 137 (1941). The requirement was expressly set out upon the amendment of the UDJA by Acts 1945, ch. 724 [4] : "When, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed. . . ." Code (1951) Art. 31A, § 6. This provision was carried over in Code (1974) Courts and Judicial Proceedings Article § 3-409 (b) in this form: "If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle."

### (b)

Assessment of real property for the purpose of *ad valorem* taxation revolves around a date of finality.[5] The necessity

4. According to the preamble to Acts 1945, ch. 724, the primary purpose of the amendment was to make clear the real legislative intent that the existence of another adequate remedy at law or in equity, contrary to recent decisions of this Court, should not preclude a judgment for declaratory relief in cases in which it was appropriate.

5. Code (1957, 1975 Repl. Vol.) Art. 81, § 14 (b) provides that all real property directed to be assessed shall be assessed at the full cash value on the date of finality. "The phrase 'date of finality' means the date as of

for a time at which an assessment is finally established is manifest. A final determination of property tax assessments is vital in the ascertainment of a tax base, the fixing of a tax rate, the accurate calculating of future revenues and the timely levying of taxes, so that a balanced budget may be obtained. Of course, it is obvious that the amount of the tax assessment of property is a matter of primary concern to the owner of the property.

The General Assembly, recognizing the importance of both the amount of the assessment and a date of finality, devised a comprehensive scheme whereby an assessment may be protested. Before the date of finality, challenge may be made as a matter of right. Notice of the assessment is required with timely opportunity to protest to the body from which the notice emanates. § 29 (a). Any taxpayer, county, city, or the Attorney General or the State Department of Assessments and Taxation may demand a hearing before the supervisor of assessments "as to the assessment of any property or any unit of tax value, or as to the increase, reduction, or abatement of any assessment, or as to the classification, for the next year," § 255 (a), and may demand a further hearing before the property tax assessment appeal board, § 255 (b). Further appeal may be made to the Maryland Tax Court, § 256. *See* §§ 229, 234; *La Belle v. State Tax Comm.*, 217 Md. 443, 451-452, 142 A. 2d 560, *cert. denied*, 358 U. S. 889 (1958). Thus, there is a full panoply of administrative procedures bestowed as of right with respect to the review of a tax assessment provided the assessment is properly protested before the date of finality.[6]

---

which assessments become final for the taxable year next following, subject only to correction as herein authorized." *Id.* § 2 (20). The date of finality is January 1 for the State and every county, incorporated city or town, and taxing district. *Id.* § 29A (a).

6. The legislature has also spelled out circumstances under which a change in assessment may be had after the date of finality but before the semiannual date of finality. Land may be reassessed whenever it has been subdivided or the character or use is changed after the date of finality but before the semiannual date of finality. Code (1957, 1975 Repl. Vol.) Art. 81, § 19 (a). Further, § 31 (f) of Art. 81 provides that "[f]or real property partially or totally damaged or destroyed by any event such as fire or other cause, which is or should be removed from the tax rolls for such reason, as to the value of the property removed or to be removed from the tax rolls,"

Review of an assessment does not stop with the exhaustion of administrative remedies. Thereafter, there is the right to a judicial review. Now, "[a]ny party to the proceedings may appeal from the [Maryland Tax] Court's final order to the circuit court of a county or to the Baltimore City Court." [7] Code (Cum. Supp. 1976) Art. 81, § 229 (1). In such judicial appeal the case shall be determined upon the record made in the Maryland Tax Court, the order of which shall be affirmed "if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record"; otherwise, the order may be affirmed, reversed, remanded or modified. *Id.* § 229 (o). "Any party to the proceedings may appeal from the order of the circuit court or Baltimore City Court to the Court of Special Appeals." *Id.* § 229 (p). The Court of Appeals may be requested to issue a writ of certiorari to review the judgment of the Court of Special Appeals. Code (Cum. Supp. 1976) Courts and Judicial Proceedings Article § 12-201. Thus, when timely invoked before the date of finality, there is a statutory right to protest an assessment for the taxable year after the date of finality, and that right extends to a judicial review of the action taken on the protest.

no taxes are due and payable if the event occurs during the first six months immediately preceding the taxable year and taxes for one-half year are due and payable if the event occurs during the first six months of the taxable year. Taxes for a full year are due and payable if the event occurs during the second six months of the taxable year.

The semiannual date of finality, is "the date as of which assessments shall be made for all real property becoming assessable up to that time and after the next previous date of finality." *Id.* § 2 (20). It is July 1st for the State and every county, incorporated city or town, and taxing district. *Id.* § 29A (a).

7. Formerly, Code (1957, 1975 Repl. Vol.) Art. 81, § 229 (1) provided: "Any party to the proceedings may appeal from the [Maryland Tax] Court's final order directly to the Court of Appeals." By Acts 1975, ch. 448, the Court of Special Appeals was designated as the appellate forum in place of the Court of Appeals. In Shell Oil Company v. Supervisor, 276 Md. 36, 343 A. 2d 521 (1975) we declared the statute unconstitutional insofar as it permitted either appellate court to review directly the judgment of the Maryland Tax Court. The legislature responded by enacting Acts 1976, ch. 338 providing for appeal to a circuit court and from its judgment to the Court of Special Appeals as set out above.

(c)

It is after the date of finality that § 67 comes into play. We have heretofore considered § 67 in two cases — *La Belle* and *Mont. Co. Council.* In each the question was that of jurisdiction to review determinations under § 67 (§ 66 in the 1951 Code), but the jurisdiction involved was that of an administrative body in the exercise of its quasi-judicial functions, not, as here, that of a court in the exercise of its judicial functions. In each relief was sought under § 67 after the assessment had become final. In *La Belle,* 217 Md. at 448, appeal was to the State Tax Commission by the taxpayer upon a denial of relief. In *Mont. Co. Council,* 275 Md. at 341, appeal was to the Maryland Tax Court by the County Council and the County Executive from the grant of a reduction in the assessment.[8] In both, we held that the administrative body had no jurisdiction over appeals in § 67 proceedings.

"The right to an appeal is not a right required by due process of law, nor is it an inherent or inalienable right. . . . An appellate right is entirely statutory in origin and no person or agency may prosecute such an appeal unless the right is conferred by statute." *Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 500, 331 A. 2d 55 (1975) (citations omitted). *La Belle* and *Mont. Co. Council* made clear that there was no statutory authority conferring upon such an administrative body the power to review a § 67 proceeding. We said in *La Belle,* 217 Md. at 452: "The powers of the State Tax Commission are entirely statutory and the statutes confer jurisdiction on it only if an assessment is protested before it has become final." We quoted this statement with emphasis in *Mont. Co. Council,* 275 Md. at 343-344, and applied it in holding that the Tax Court had no jurisdiction over § 67 proceedings. We noted that § 256 "makes no mention of § 67 proceedings on applications by taxpayers

---

8. Acts 1959, ch. 757 abolished the State Tax Commission. Two separate agencies were created in its place, the Maryland Tax Court, in which was vested the Commission's "quasi-judicial" functions, and the Department of Assessments and Taxation, in which was vested the Commission's "administrative" functions. Mont. Co. Council v. Supervisor, 275 Md. 339, 347, 340 A. 2d 302 (1975).

after the date of finality for discretionary relief. And § 67 makes no mention of appeals to the Tax Court from the grant or denial of relief under that section." *Id.* at 346.

In *Mont. Co. Council* we also rejected the claim that § 318 of Art. 41 of the Maryland Code (1957, 1971 Repl. Vol.), the codification of Acts 1959, ch. 757 which created the Tax Court one year after the decision in *La Belle,* gave the Tax Court a broader jurisdiction over appeals in property tax assessment cases than the jurisdiction set forth in Art. 81, § 256. We reasoned that even if Art. 41, § 318 could be viewed as a grant of appellate jurisdiction to the Tax Court independent of the provisions of Art. 81, the result would not be different. The jurisdiction of the Tax Court referred to in § 318 was over the determination "of any final assessing or taxing authority . . ." and the determination of the final assessing or taxing authority at the time the cases in *Mont. Co. Council* arose was the determination of the Appeal Tax Court for Montgomery County, not the joint discretionary action of the three entities as provided for in § 67. *Mont. Co. Council,* 275 Md. at 347-348.

Section 67 proceedings are not subject to the judicial review provided by the Administrative Procedure Act, Maryland Code (1957, 1971 Repl. Vol.) Art. 41, § 255. The State Department of Assessments and Taxation and the Maryland Tax Court are not agencies under the Act. *Id.* § 244 (a); *Dickinson-Tidewater v. Supervisor,* 273 Md. 245, n. 4 at 255, 329 A. 2d 18 (1974). Even if the three fiscal and taxing authorities designated by Art. 81, § 67 were considered to be an "agency" within the contemplation of the Act, the right to judicial review provided by Art. 41, § 255 (a) extends only to a final decision in a contested case, and a proceeding under § 67 does not fall within the meaning of "contested case." It is not a proceeding "in which the legal rights, duties, or privileges of specific parties *are required by law or constitutional right to be determined after an agency hearing."* Art. 41, § 244 (c) (emphasis supplied). The joint action of the three entities provided by § 67 is entirely discretionary, *Mont. Co. Council,* 275 Md. at 348 and § 67 does not require a hearing. The discretionary nature of § 67

proceedings was made clear in *La Belle*, for its holding was not predicated solely upon the absence of statutory authority. Its rationale included as an integral part of its reasoning the nature of the § 67 proceedings. *See Mont. Co. Council*, 275 Md. at 343. We discussed the nature of those proceedings in *La Belle*, 217 Md. at 451-452:

> The potential relief held out by [§ 67] to a taxpayer whose assessment has become final is a matter of grace and not a matter of right. . . . If the taxpayer has in due time taken the steps prescribed by the statutes to call upon the local assessing authorities to hear and consider his case, and then duly appealed to the State Tax Commission, or has appealed in time directly to the State Tax Commission from the assessment, he is entitled to have the body called upon act on his case as a matter of right. If, however, he permits an assessment to become final, he can only hope that the three taxing and fiscal authorities who are named in Sec. [67] of Art. 81 will agree that his cause is just and demands relief. If they do not, the statute gives him no further remedy and the assessment that has been allowed to become final remains on the books for the year in question.

We quoted this language in *Mont. Co. Council* and its import was a significant consideration in our assertion that *La Belle* was dispositive of the jurisdictional issue. *Mont. Co. Council*, 275 Md. at 342-344.

We conclude that there is no statutory authority giving a circuit court jurisdiction, by way of declaratory judgment or otherwise, over the propriety of a grant or denial of a reduction in a real property assessment under § 67.

(d)

The trial court believed that it had an inherent right which applied to give it jurisdiction over § 67 proceedings. To it, *La Belle* and *Mont. Co. Council* presented no problem

because the matter before it was not a statutory appeal but an invocation of the court's inherent powers of judicial review. It perceived the existence of a more fundamental right of appeal than that provided by statutes or administrative regulations. It had, the trial court declared, the inherent power to correct abuses of discretion and arbitrary, illegal, capricious or unreasonable acts. It said that "the legislature was under no obligation to provide this extraordinary relief [set out in § 67] but that once it assumed the responsibility to provide some relief, judicial review must be available to correct any abuses of the authorities' discretion." The Court of Special Appeals also rejected appellees' claim that *La Belle* and *Mont. Co. Council* were controlling with respect to the jurisdictional issue, although observing that "these cases appear dispositive at first blush . . . ." *Clark*, 34 Md. App. at 144. The intermediate appellate court "fully agree[d]" with the trial court, relying, as did the trial court, upon *Gould*. We think that the reliance was misplaced.

*Gould* concerned the Criminal Injuries Compensation Act which provided government financial assistance for victims of crime. Acts 1968, ch. 455; Code (1957, 1973 Repl. Vol.) Art. 26A. The statute created a Criminal Injuries Compensation Board, § 3, with power to hear and determine claims for awards, § 4, designated those eligible for awards, § 5, and the prerequisites to an award, § 12. It established procedures for the filing of allowable claims, § 6 and § 7. A decision on a claim was to be made by a single Board member, § 8, with the right of the claimant to apply for consideration of the decision by the entire Board, § 9. Section 10 (a) provided:

> Within thirty days after receipt of the copy of the report containing the final decision of the Board, the Attorney General may, if in his judgment or in the judgment of the Secretary of Public Safety and Correctional Services the award is improper, commence a proceeding in the circuit court of the county or the Supreme Bench of Baltimore City, as the case may be, to review the decision of the

Board. Any such proceeding shall be heard in a summary manner and shall have precedence over all other civil cases in such court. The court may, however, take additional testimony, if it so desires. There shall be no other judicial review of any decision made or action taken by the Board, by a member of the Board or by the secretary of the Board with respect to any claim.

We found in *Gould*, 273 Md. at 498-499, that the Administrative Procedure Act was not applicable, and thus a claimant had no statutory right whatsoever to judicially review the Board's decision.[9] It was under such circumstances that we invoked the inherent power of the court to review the denial of Gould's claim. In so doing, however, we made clear that the exercise of the power was not without restriction. We did say in *Gould*, 273 Md. at 500-501:

"[T]his Court, in a long line of cases, has consistently held that the Legislature cannot divest the courts of the inherent power they possess to review and correct actions by an administrative agency which are arbitrary, illegal, capricious or unreasonable."

And in *Zion Evang. Luth. Ch. v. St. Hwy. Adm.*, 276 Md. 630, 635, 350 A. 2d 125 (1976), we noted that "it has frequently been held that an allegedly arbitrary, capricious or illegal decision by an administrative agency will be judicially reviewed even where no right of review is granted by statute." We commented: "This is precisely the holding of [*Gould*]." *Id.* at 635-636. It was apparently in the light of

---

9. Acts 1975, ch. 204 added subsection (c) to § 10:

Within 30 days of the final decision of the Board, any claimant aggrieved by the final decision may appeal the decision under the applicable provisions of the Administrative Procedure Act, Article 41, Sections 255 and 256 of the Code.

We note that the prohibition against "other judicial review" set out in subsection (a) was not stricken by the 1975 amendment and remains in the law.

these statements that the Court of Special Appeals, following the trial court's reliance on *Gould*, concluded that a circuit court has inherent power to review arbitrary, capricious, or illegal actions under § 67· proceedings. It found the message of *Gould* to be clear:

> A legislature may not circumvent the system of checks and balances which guarantee that no branch of government, however designated, may be granted *an untrammelled* right arbitrarily to grant or withhold that which is derived from the people, be it due as a matter of right, sought as an aspiration, or bestowed as largess. A democracy does not recognize such monarchical discretion. [*Clark*, 34 Md. App. at 145 (emphasis supplied)].

Alembicated, however, this means no more than what Hammond, C. J. said in delivering the majority opinion in *Insurance Comm'r v. Nat'l Bureau*, 248 Md. 292, 300, 236 A. 2d 282 (1967), which was also quoted in *Clark*, 34 Md. App. at 144-145 and in *Gould*, 273 Md. at 501-502:

> The courts have been alert to exercise their residual power to restrain improper exercises of administrative powers whether judicial or legislative in nature. *If the legislature has not expressly provided for judicial review*, a court will ordinarily utilize its inherent powers to prevent illegal, unreasonable, arbitrary or capricious administrative action. (Emphasis supplied).

The key to the right of a court to utilize inherent powers to prevent illegal, unreasonable, arbitrary or capricious administrative action is that "the legislature has not expressly provided for judicial review." If reasonable judicial review has been provided there is no "*untrammelled* right arbitrarily to grant or withhold that which is derived from the people." Our observation in *Zion Evang. Luth. Ch.* is to be viewed in this light. The general statement in *Gould* as to the inherent power of the courts to review and correct arbitrary actions by an administrative agency is followed,

after a citation of cases, by quotations from some of them to support the general statement. The quotation from *Insurance Comm'r v. Nat'l Bureau* continues, as set out in *Gould*, 273 Md. at 502:

> In *Heaps v. Cobb*, 185 Md. 372, 379, this Court said: "The legislature is without authority to divest the judicial branch of the government of its inherent power to review actions of administrative boards shown to be arbitrary, illegal or capricious, and to impair personal or property rights; * * *," and then quoted the opinion in *Hecht v. Crook*, 184 Md. 271, 280:
>
>> "Courts have the inherent power, through the writ of mandamus, by injunction, or otherwise, to correct abuses of discretion and arbitrary, illegal, capricious or unreasonable acts; but in exercising that power care must be taken not to interfere with the legislative prerogative, or with the exercise of sound administrative discretion * * *."

We declared in *Gould* that the rule announced in *Hecht* was that *"in the absence of any statutory provision for an appeal* such review by the courts may be 'through the writ of mandamus, by injunction or otherwise,'" (emphasis supplied), and we asserted that the rule "was not only restated in *Heaps v. Cobb, supra,* but reiterated in *Hammond v. Love,* 187 Md. 138, 49 A. 2d 75 (1946); *Brashears v. Lindenbaum,* [189 Md. 619, 56 A. 2d 844 (1948)]; *Gianforte v. Board of License Comm'rs,* [190 Md. 492, 58 A. 2d 902 (1948)]; *Town of District Heights v. County Comm'rs,* [210 Md. 142, 122 A. 2d 489 (1956)]; *Insurance Comm'r v. National Bureau of Casualty Underwriters, supra." Gould,* 273 Md. at 503. We also quoted in *Gould* from *Balto. Import Car v. Md. Port. Auth.,* 258 Md. 335, 342, 265 A. 2d 866 (1970):

> [I]t is equally well settled that *when the statute creating an agency makes no provision for judicial*

*review of the agency's determination,* courts will act where a decision is not supported by facts, or where an action is not within the scope of delegated authority, or is arbitrary, capricious or unreasonable. [*Gould,* 273 Md. at 502 (emphasis supplied)].

*Heaps* and *Hecht* were two of the three cases *Balto. Import Car* cited as authority for this statement, which we thought was "the modern view." We found in *Gould,* on the authority of our prior decisions, that relief by way of mandamus was properly invoked to review the abuse of discretionary powers by an administrative agency, but only where "no appeal was provided by statute and the Administrative Procedure Act was inapplicable." *Gould,* 273 Md. at 503-504. And we observed that in our prior decisions relief by way of certiorari had been held appropriate "where an inferior tribunal ... acting in a quasi-judicial capacity has undertaken to act contrary to law or beyond the scope of its jurisdiction *and the lawfulness of such action could not be inquired into upon appeal." Id.* at 504 (emphasis supplied).

It is readily apparent that *Gould* fully recognized and applied as its underlying rationale the firmly established rule that ordinarily when an administrative remedy is provided by statute, relief provided under those statutory provisions must be exhausted before a litigant may resort to the courts. That is, such a remedy is exclusive, and the administrative body must not be by-passed by the pursuit of other remedies. *DuBois v. City of College Park,* 280 Md. 525, 533, 375 A. 2d 1098, 1104 (1977) and cases therein cited. The rule has been invoked consistently with respect to tax assessments of property. *See,* for example, *Gager v. Kasdon,* 234 Md. 7, 9-10, 197 A. 2d 837 (1964); *Casey Dev. Corp. v. Mont. County,* 212 Md. 138, 145-147, 129 A. 2d 63 (1957); *Tanner v. McKeldin,* 202 Md. 569, 578, 97 A. 2d 449 (1953); *Reiling v. Comptroller,* 201 Md. 384, 388-389, 94 A. 2d 261 (1953); *Amer. Bank Stationery Co. v. State,* 196 Md. 22, 28-29, 75 A. 2d 86 (1950); *Tawes, Comptroller v. Williams,* 179 Md. 224, 228-229, 17 A. 2d 137 (1941).

It is manifest that the distinguishing feature between *Gould* and the case *sub judice* is the right to judicial review of the action of the administrative agency. The plain teaching of *Gould* is that the inherent power of a court to review an administrative agency's determination is not unbridled. It may not be utilized when the statutory right of judicial review is available. That right did not exist under the Criminal Injury Compensation Act applicable in *Gould,* and, in fact, was expressly precluded. It was fully available under the applicable statute in the instant case. Section 67 cannot be isolated from the other provisions of Art. 81. It must be considered in the light of those sections which provide, as of right, review of the determination of each successive administrative agency, step by step, under administrative procedures, and then review by the courts of the final assessing authority's action. Under such a comprehensive scheme, we see no infirmity in the absence of judicial review of the potential extraordinary relief held out by § 67. That relief, as we said in *La Belle* and affirmed in *Mont. Co. Council,* is a matter of grace. When a taxpayer permits an assessment to become final, he can only hope that he may obtain relief under § 67. If relief is denied him or if the relief granted does not meet his expectations, he is entitled to nothing further at that time. The assessment fixed remains on the books for the year in question. Of course, the taxpayer is free to apply for reassessment of the property prior to the next date of finality for the next ensuing tax year and comply with the protest requirements thereafter. By so doing each year he may run the full gamut of his rights of review of the assessment which aggrieves him. We do not think that our view is incongruous with the fact that the reason for appellees' dissatisfaction with the assessment was the sewer moratorium which was imposed after the date of finality. There are many reasons why a taxpayer, content with an assessment on the date of finality may become dissatisfied thereafter. For example, he may become aware that there has been a decrease in the realistic full cash value of the property due to economic conditions, or availability of financing or rezoning, or, as here, unexpected

restrictions on its use. Such matters may be of probative value to obtain an abatement upon timely application for reassessment under procedures available as of right, for we have recognized that "each annual assessment of property for tax purposes is distinct and presents its own problems." *Easter v. Department,* 228 Md. 547, 551, 180 A. 2d 700 (1962), *cert. denied,* 371 U. S. 235 (1963). But such matters do not change the purely discretionary nature of the § 67 proceeding and permit judicial review so patently precluded by the availability, as of right, of the statutory remedy whereby the discontented taxpayer may apply for reassessment prior to the next date of finality for the ensuing tax year and obtain administrative and judicial review for complying with the protest requirements thereafter.

## III

We have found that ordinarily a court does not have inherent power to review the assessing authorities' determinations with respect to the potential extraordinary relief held out as a matter of grace by § 67. Appellees, however, have mounted a constitutional attack on § 67 as applied to them, and the question is whether the principle holds fast in the face of such a challenge.

We have indicated, *supra,* that when an administrative remedy is provided by statute, relief provided under those statutory provisions must be exhausted before a litigant may resort to the courts. That is, such a remedy is exclusive, and the administrative body must not be by-passed by pursuing other remedies. *Du Bois v. City of College Park, supra,* and cases therein cited. However, "[t]here are few absolutes in the law, and the rule that an administrative remedy must be exhausted before recourse is had to the courts is not one of them." *Poe v. Baltimore City,* 241 Md. 303, 308, 216 A. 2d 707 (1966). There are general statements in past opinions of this Court, which taken apart from the actual decisions involved, appear to support the claim that even though there be an administrative remedy, a court of

equity may intervene and act when a constitutional question is involved. *See Schneider v. Pullen,* 198 Md. 64, 68, 81 A. 2d 226 (1951); *Kracke v. Weinberg,* 197 Md. 339, 343, 79 A. 2d 387 (1951). The law on the matter was made clear in *Poe.* It declared that where there is full opportunity for a property owner to protest an assessment to administrative agencies and adequate provisions for judicial review of the agencies' action, a court shall not take jurisdiction unless the administrative remedies have been exhausted. This is so even though a constitutional issue has been raised, when that issue goes to the application of a general statute to a particular situation, as contrasted with a constitutional attack upon the validity of a general enactment as a whole, which is reviewable in any event. *Id.* at 308-309. The *Poe* rule was fully in accord with prior decisions of this Court,[10] and has since been affirmed and consistently applied.[11]

Appellees' attack goes only to the constitutionality of § 67 as applied and not to its constitutionality on its face, but the *Poe* rule does not come into play because there was no failure to exhaust the administrative remedies provided by the statute. Appellees requested consideration of the assessment of their property under § 67 procedures. The three agencies designated by § 67 reviewed the assessment and duly issued an order abating it. There was nothing left to be done under § 67, and exhaustion of administrative remedies was not involved. In such circumstances, we believe it is imperative that the inherent power of a court be not limited to ascertaining whether § 67 is constitutional on its face, but may be properly invoked to determine whether

10. *See* Richmark Realty v. Whittlif, 226 Md. 273, 281, 173 A. 2d 196 (1961); Pressman v. Barnes, 209 Md. 544, 549, 121 A. 2d 816 (1956); Pressman v. State Tax Commission, 204 Md. 78, 84, 102 A. 2d 821 (1954); Tanner v. McKeldin, *supra,* 202 Md. at 578; Reiling v. Comptroller, *supra,* 201 Md. at 388; Tawes, Comptroller v. Williams, *supra,* 179 Md. 228-229; Ousler v. Tawes, 178 Md. 471, 13 A. 2d 763 (1940).

11. *See* Gingell v. County Commissioners, 249 Md. 374, 376, 239 A. 2d 903 (1968); Agrarian, Inc. v. Zoning Inspector, 262 Md. 329, 331-332, 277 A. 2d 591 (1971); Comm'rs of Cambridge v. Henry, 263 Md. 370, 373-374, 283 A. 2d 415 (1971); Hartman v. Prince George's Co., 264 Md. 320, 323-325, 286 A. 2d 88 (1972); Nottingham Village v. Balto. Co., 266 Md. 339, 357, 292 A. 2d 680 (1972); Arnold v. Prince George's Co., 270 Md. 285, 297, 311 A. 2d 223 (1973); Soley v. St. Comm'n on Human Rel., 277 Md. 521, 527, 356 A. 2d 254 (1976).

it is constitutional as applied. For example, were it otherwise an aggrieved party would be completely without recourse as to a determination by the three assessing authorities which was invidiously discriminatory.

The trial court disposed of this case under motions for summary judgment filed by appellants and appellees. It denied appellants' motions and granted appellees' motion "to the extent that these proceedings are hereby remanded to the Supervisor of Assessments for Montgomery County, the Director of Finance for Montgomery County and the Property Tax Assessment Appeals Board for such further proceeding under [§ 67] as may be necessary, consistent with the views expressed in this opinion. . . ." The Court of Special Appeals reversed the judgment summarily granted in favor of appellees, vacated the denial of appellants' motions for summary judgment, and remanded the case "pursuant to Md. Rule 1071." *State Dep't of Assess. & Tax. v. Clark, supra,* 34 Md. App. at 148-156. It declared: "Upon remand the trial court must still face the limited constitutional issue raised in [the] motions for summary judgment . . ." which was not reached by the trial court. *Id.* at 156.

Maryland Rule 610 d 1 spells out two requirements for the grant of a summary judgment. It provides that the judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show (1) that there is no genuine dispute as to any material fact, and (2) that the moving party is entitled to judgment as a matter of law. *Honaker v. W.C. & A.N. Miller Dev. Co.,* 278 Md. 453, 458, 365 A. 2d 287 (1976); *Lynx. Inc. v. Ordnance Products,* 273 Md. 1, 7-8, 327 A. 2d 502 (1974).

There was no genuine dispute here as to any material fact. The propriety of the trial court's action depends upon whether the moving party was entitled to judgment as a matter of law. *Board v. John K. Ruff, Inc.,* 278 Md. 580, 594, 366 A. 2d 360 (1976). But, we see no need to remand the case for determination of the constitutional issues because we can resolve them on the record before us. They were

presented to the trial court, and we shall exercise our discretion to determine them to avoid the expense and delay of another appeal. Maryland Rule 885.

The constitutional issues were framed by the pleadings. Appellees' amended bill for declaratory relief sought a declaration that § 67 was unconstitutional as applied to them in that it violated their rights to equal protection of the laws, due process, and amounted to a taking without just compensation. The bill alleged that "[i]t has been the practice of the Appeal Tax Court to completely reassess the land whose owners were fortuitous enough to have disagreed with the original assessment and filed a protest," but, "[i]t is the further practice of the Appeal Tax Court and the assessing authorities, to grant an arbitrary 25% reduction in assessment in cases where the date of finality has passed but where the Washington Suburban Sanitary Commission has effected the availability of sewer." Appellees' amended bill, ¶ 13 and ¶ 14. This practice of a 25% abatement was carried out with respect to appellees. *Id.* ¶ 16.

Appellees' motion for summary judgment and opposition to appellants' motions, included the claim that they were denied equal protection of the laws. They urged: "Having found [appellees] entitled to relief, [appellees] were entitled, under Equal Protection, to be treated the same as all other persons similarly affected by the sewer moratorium." They alleged that the Appeal Tax Court limited to 25% a decrease in the assessment of property affected by the sewer moratorium, when relief was sought under § 67, but did not so limit an abatement upon a protest timely filed before the date of finality. They also contended that "the combined actions of the State of Maryland through its Secretary of Health and the Washington Suburban Sanitary Commission on the one hand and [appellants] on the other hand has amounted to a taking as contemplated by and prohibited by the Fourteenth Amendment to the United States Constitution." The substance of this contention is that they were deprived of the right to use the property as zoned without just compensation.

Appellants' motions for summary judgment and the

memoranda in support of them alleged that "the undisputed facts clearly and conclusively demonstrate that there has been no unconstitutional action."

The facts were placed before the trial court by admission of facts, answers to interrogatories, and depositions. *See Vanhook v. Merchants Mut. Ins. Co.,* 22 Md. App. 22, 26-28, 321 A. 2d 540 (1974). We summarize them. The subject property had been rezoned in 1970 from the classification of rural-residential to multiple family, medium density residential. Its present use was residential and it was improved by a frame dwelling more than fifty years old. There was a single sewer hookup existing on the house and no other sewer hookups were available due to the sewer moratorium. Water was obtained from a well. In an answer to interrogatories, appellees said: "Lack of sewer availability prevents the use of the property as zoned since you cannot put garden apartments on it; it has no sale value as zoned property due to the fact that a purchaser could not use it as zoned; a willing purchaser will not pay zoned value unless it can be use as zoned." During the past five years no effort has been made to develop the property or to list it for sale. The 25% reduction in the assessment, granted under § 67, was pursuant to a policy of the Office of the Supervisor of Assessments for Montgomery County to apply an abatement in that amount to properties which were affected by the sewer moratorium. The policy was adopted 16 November 1972 and explained in a memorandum of that date from the Supervisor of Assessments to the Appeal Tax Court. It read, *inter alia:*

> "[A]fter reviewing a number of situations . . . this office has finally come to the conclusion that a fair and reasonable allowance for the sewer moratorium should be a maximum of 25%.
>
> "This percentage takes into consideration that the moratorium may last for a period of three (3) years and using an 8% annual interest rate over the three-year period would be reasonable consideration in our judgment to arrive at an overall allowance of 25%.

The policy to grant a 25% reduction in assessment of land where the sewer moratorium affected its usability was "used, enforced and adhered to by the Office of the Supervisor of Assessments for Montgomery County both in § 67 cases and in those cases where protest was made before the date of finality." William E. Gartner, Sr., who was a supervisor in the Assessment Office of Montgomery County in 1972, hearing Supervisor's appeals, disclosed in his deposition that even before the sewer moratorium a lot that did not have sewer service was granted a 25% standard allowance as a general practice. "The presence of a sewer, or the absence of a sewer, would made a 25% difference in its value. . . . It was a uniform practice. . . . I granted none more than 25%." Gartner could not recall any property owner presenting any evidence that the effect was greater than 25% "market evidence." When the sewer moratorium went into effect, 25% was the maximum abatement allowed.

On the other hand, Daniel B. Weigers, a member of the Appeal Tax Court from 1968 to 1973, said in his deposition that after the sewer moratorium went into effect it was the practice of the Court to reduce assessments on properties affected by the moratorium "to the full extent that we thought they were warranted" when there was a timely appeal. In such cases the Court was "not inhibited by the mandates of Section 67 of Article 81." When relief was sought under § 67 a 25% abatement was awarded as a uniform policy shared by the three agencies charged with making the determination. For the 1972-1973 levy years, forty-four cases under § 67 came before the Court and all received a 25% reduction. Wiegers pointed out: "Well, we had to recognize that even though we felt a particular case warranted more than 25 percent, that is we sought to implement more than 25 percent, that it would not be concurred in by the Supervisor of Assessments and therefore, the taxpayer would get nothing."

We discussed equal protection of the laws in *Rogan v. Commrs. of Calvert County*, 194 Md. 299, 71 A. 2d 47 (1950):

The purpose of the equal protection clause of the **Fourteenth Amendment of the Constitution of**

the United States is to protect every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by the provisions of a statute or by improper enforcement of a statute. Intentional and systematic undervaluation by assessors of other taxable property in the same class violates the constitutional right of a person taxed upon the full value of his property. However, mere errors of judgment on the part of State or County officials in making assessments will not support a claim of such discrimination. There must be something which in effect amounts to an intentional violation of the essential principle of practical uniformity. The good faith of such officials and the validity of their actions will be presumed. When their actions are assailed, the burden of proof is upon the complaining party. *Id.* at 309-310.

We further observed:

"We accept the rule, as adopted in other States, that the assessment of the property of others at a lower proportion of its value than that of a complaining taxpayer, which is not assessed at more than its fair cash value, does not make the tax on the latter invalid, unless the assessment was fraudulently made." *Id.* at 313.

*See Shell Oil Co. v. Supervisor*, 278 Md. 659, 668-670, 366 A. 2d 369 (1976); *Tax Comm. v. Brandt Cabinet Works*, 202 Md. 533, 544, 97 A. 2d 290 (1953).

Considering the facts before the trial court, and the proper inferences to be drawn therefrom, in the light most favorable to appellees, *Lawless v. Merrick*, 227 Md. 65, 70, 175 A. 2d 27 (1961), we see no invidious discrimination. There was no intentional and systematic undervaluation by assessors of other taxable property in the same class. All those who sought the extraordinary relief after the date of finality, which may be granted as a matter of grace under

§ 67, were granted a decrease of 25%. It is clear that this did not amount to an intentional violation of the essential principle of practical uniformity. That some in another class, that is, those who pursued the protest procedures to which they were entitled as of right before the date of finality, may have received a larger abatement, did not make the tax on appellees' property invalid. We hold that there was no denial of equal protection of the laws.

Appellees' claim that appellants deprived them of a property right without just compensation is predicated upon their assertion that appellants refused to grant "appropriate tax assessment relief." They speak in terms of the failure "to provide adequate relief." The property right to which they refer is, they assert, the "right" to use the property under zoning which permitted the construction of garden type apartments but which was stymied by the sewer moratorium. We do not believe that whether there is a deprivation of property without just compensation is properly to be determined here in terms of "adequate relief." We find applicable the principle followed in zoning cases. When a restriction is supportable as a proper exercise of police power,[12] it is not enough for the property owner to show that the restriction results in substantial loss or hardship. There is no deprivation of his property without payment of just compensation unless the effect of the restriction is to deprive him of any reasonable use of the property. *Stratakis v. Beauchamp,* 268 Md. 643, 654, 304 A. 2d 244 (1973); *Norbeck v. Montgomery County,* 254 Md. 59, 66-67, 254 A. 2d 700 (1969); *Montgomery Co. Council v. Kacur,* 253 Md. 220, 229, 252 A. 2d 832 (1969); *Fertitta v. Brown,* 252 Md. 594, 599, 251 A. 2d 212 (1969); *Friedman v. Montgomery Co.,* 247 Md. 197, 202-203, 230 A. 2d 651 (1967); *Tauber v. Montgomery Co.,* 244 Md. 332, 337, 223 A. 2d 615 (1966). After the sewer moratorium appellees had the continued use of their property as a residence. The temporary preclusion because of the moratorium of its use

---

12. Appellees do not contest the legality of the sewer moratorium, and we said in Northampton Corp. v. Wash. S.S. Comm'n, 278 Md. 677, 685, 366 A. 2d 377 (1976) that it was a valid exercise of the state's police power.

as permitted by the zoning change did not amount to the taking of property without just compensation so as to make the action of the assessing agencies under § 67 constitutionally infirm. We so hold.

## IV

We have found that when the procedures provided by § 67 have been exhausted, that is, the designated assessing authorities have duly issued an order denying relief or decreasing an assessment, a court has inherent power to review relief granted or denied under § 67 but with the limitation that such review is restricted to whether the determination of the assessing authorities met constitutional standards. We have held on the record before us that under the circumstances here the 25% decrease in the assessment of appellees' property was not constitutionally infirm. It follows that the trial court should have denied appellees' motion for summary judgment and granted the motions of appellants. We reverse the judgment of the Court of Special Appeals and remand the case to it with direction to enter judgments accordingly pursuant to Maryland Rule 1075 a applicable to that court.

> *Judgment of the Court of Special Appeals reversed; case remanded for further proceedings in accordance with this opinion; costs to be paid by appellees.*